138 So.2d 795 (1962)
Francis J. CORR and Dorothy Corr, His Wife, Appellants,
v.
C.E. LEISEY, Appellee.
No. 2866.
District Court of Appeal of Florida. Second District.
March 9, 1962.
Rehearing Denied March 27, 1962.
Hugh C. Macfarlane and William Terrell Hodges, Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
Marvin E. Barkin and Leslie D. Scharf, Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellee.
ALLEN, Judge.
Appellant, defendant below, brings this interlocutory appeal from an order striking certain of his amended affirmative defenses which had been previously stricken several times.
Plaintiff brought suit to impose a constructive trust upon a portion of certain lands held by defendant and acquired by him from the Ruskin Vegetable Cooperative in which plaintiff was a director. The complaint alleges that prior to the purchase by defendant, plaintiff had also been interested in acquiring this land. Defendant had approached the plaintiff and proposed that if the plaintiff would refrain from purchasing the land but would approve its sale to defendant by the cooperative in which plaintiff was a director, defendant would, in consideration for such forbearance and approval, convey a certain portion of the land to plaintiff. The plaintiff accepted this proposition and then wrote a letter to the cooperative stating:
"This letter is written to advise you that I am approving the sale of the 15 acres at corner of Miller mac Road and U.S. 41 to Francis J. Corr for the sum of $15,000.00 with the understanding that I am to receive the corner 200 ft. x 200 ft. from Francis J. Corr."
Defendant Corr initialed this letter and scratched out the $15,000.00 figure, substituting instead the figure $20,000.00. After *796 defendant acquired the land from the cooperative, plaintiff called upon him to convey to plaintiff the corner 200 ft. x 200 ft. and defendant refused.
Defendant answered, admitted signing the letter to the cooperative, denied any duty as a constructive trustee and alleged certain affirmative defenses. The affirmative defenses in the amended answer which were stricken by the order appealed from alleged that plaintiff was a vice-president and director of the cooperative at all times material; that plaintiff had refused to approve the sale of the land to defendant and had been personally interested in acquiring the land; that the other directors of the cooperative had been unwilling to sell the land to the defendant until the plaintiff approved the sale; and that such approval was given on condition that defendant reconvey the corner lot to plaintiff.
Whereupon defendant alleged that this conduct by the plaintiff was a breach of his fiduciary duty to the cooperative; that the ultimate conveyance to the plaintiff would result in his acquiring the land from the cooperative free of cost; that the alleged agreement of reconveyance would result in defendant receiving less than the total land purchased and a sale of land by the cooperative at less than full market value; and that the sale of land at less than its full market value pursuant to an agreement by which the plaintiff, an officer and director of the cooperative, would derive a personal profit not shared in common with other stockholders was a fraud on the cooperative and contrary to public policy.
In essence, the affirmative defenses allege that the agreement entered into by plaintiff, as a corporate director, was self dealing under the agreement to the detriment of the cooperative; and that a self dealing contract by a corporate director concerning the disposition of corporate property is unenforceable against a third party as being contrary to public policy.
The portions of the affirmative defenses not stricken leave a factual issue pending in the cause below relating to whether further negotiations as to price for the reconveyance of the corner lot were contemplated by plaintiff and defendant in their agreement.
The circuit judge stated that he was of the opinion that the alleged contract would be enforceable between the plaintiff and defendants unless there was fraud or bad faith exercised by the plaintiff on the Directors of the Ruskin Vegetable Cooperative through a lack of full disclosure to said board of directors, and thereafter struck various defenses raising this question.
This court, in a recent case, Schaal v. Race, Fla.App. 1961, 135 So.2d 252, held that a contract could not be enforced, although fully executed, as far as services rendered were concerned where a public policy statute of the state was violated.
This court also held in the case of Armco Drainage & Metal Products v. County of Pinellas, Fla.App. 1962, 137 So.2d 234, that where the Board of County Commissioners of Pinellas County contracted to purchase certain material of over $1,000 in value without complying with the bidding statutes of Florida, that this was a public policy statute and therefore a party who participated in such a violation could not recover from the county.
The question here involved is where a director has brought about a sale of corporate property, is the director's prior personal contract with the third party purchaser for conveyance of a portion of the property to said director enforceable, full disclosure of his to-be-acquired interest having been made to the other directors before the sale?
Apparently from the pleadings both the plaintiff and the defendant had, prior to the purchase by the defendant, been interested in acquiring certain property owned by the cooperative corporation. The members of the board of directors were unwilling to sell *797 the land to the defendant unless the plaintiff would approve the sale. The defendant approached the plaintiff and, after certain discussions, suggested that if the plaintiff would withdraw from purchasing the property so that the defendant could purchase it, the defendant would make available to the plaintiff a corner lot of the property, which the plaintiff agreed to. The plaintiff wrote a letter to the cooperative which was initialed by the defendant, advising the cooperative that he approved the sale of 15 acres to the defendant for $20,000 with the understanding that the plaintiff would receive a corner lot of some 200 x 200 feet after the purchase from the defendant. After this letter was received, the board of directors authorized the purchase of the 15 acres by the defendant.
We are not confronted in the instant case with the rights of the corporation of which the plaintiff was a director and officer, but rather the rights of a third person who is neither a creditor, officer or otherwise interested in the Ruskin Vegetable Cooperative so far as this record is concerned.
In selling or purchasing property for the corporation, the officers must act in good faith. In 19 C.J.S. Corporations § 774, p. 136, the rule generally is stated as follows:
"As in other transactions, the directors in dealing with the corporate property must exercise the same degree of care that men of ordinary prudence would exercise with respect to their own property, and such dealings will be subjected to the severest scrutiny when challenged in a court of equity. * * *"
The same authority states in § 775, p. 137:
"A purchase of corporate property by an officer or director is not void, but is voidable at the instance of the corporation if it acts promptly and offers to return the consideration. The courts will uphold the purchase when, and only when, it was fairly made for an adequate consideration, the burden being on the purchasing officer to show the fairness and the adequacy of consideration."
Again in § 776, p. 142, it is stated:
"Ordinarily a sale of property to a corporation by an officer or director will be upheld when, and only when, it is fairly and openly made and is free from fraud or bad faith. The relief awarded may consist in holding the officer or director liable for the profits made by him, or of a rescission of the sale and a restoration of the vendor to his former position, or of a refusal of specific performance. An injunction may be granted restraining directors who have an interest in certain property from voting or acting officially upon a proposition to purchase the same."
The "good faith" rule in any dealing between a director and the corporation is dealth with in 1 Hornstein, Corporation Law and Practice § 439, p. 541 (1959) as follows:
"Common Law Standard of Good Faith  Self Dealing.
"Self-dealing is the category of action most frequently complained of when directors are charged with departures from the standard of good faith. The problem could, of course, be easily solved by a rigid prohibition, a prophylaxis which operates almost automatically. Such a mechanical rule was promulgated by the courts, and for a long time was summarily applied. It declared that any transaction in which a director was involved, directly or indirectly, was void or voidable at the option of the corporation. The growth of corporations and practical necessities have combined to make so rigid an approach undesirable. The best interests of the corporation may be furthered by transactions with its own directors, and that is the very *798 reason why some of them are elected. The test should be whether the business operations with them are legitimate.
"All self-dealing is subject to severe scrutiny, facilitated by preliminary classification into one of two groups: (1) transactions between the corporation and a director or directors; (2) transactions between corporations with interlocking directors. The former type of situation is the more subject to abuse or misuse, and judicial condemnation of it is more frequent.
"The most troublesome question arises when a director interested in a transaction is counted toward a quorum of the board passing on it or when he votes for its approval. As one would expect, judicial disapproval is more frequent in situations where there would have been no quorum without him or if the transaction could not have been authorized without his vote. A few jurisdictions (now a distinct minority) still rule that such a transaction is voidable irrespective of fairness. In a majority of the states, however, a transaction involving an interested director is now voidable only if unfair (i.e., a hard bargain) or if the directors acted in bad faith.
"Where a transaction has been authorized by an independent majority (i.e., the `interested' director was not necessary either to the quorum or to the authorizing vote), almost all courts will now uphold the transaction if fair. Fairness is a prerequisite because of the danger of `log-rolling.'
"Whether the court's rule makes the transaction `voidable' or `voidable if unfair,' the ultimate test is one of fairness since a voidable transaction, if fair, may be ratified by the shareholders. Ratification after the act appears more effective than anterior exculpatory provisions in the corporate articles, possibly because such provisions have become routine. `Boilerplate' exculpatory provisions in the public-issue corporation now merely shift the burden of proof. In closely held corporations where so often ratification may be inferred from conduct, fairness becomes virtually the only test.
"Non-disclosure by an interested director may itself constitute unfairness. This wholesome rule can be mechanically applied without any of the unsatisfactory effects which resulted from a rigid bar against any self-dealing. The requirement of disclosure (to prevent the possibility of secret profits) dates back at least to the by-laws of the Bank of England and is mandatory not only under the current English statute, but also under several state statutes. The scope of disclosure required is flexible, but will usually include relevant aspects, such as the nature of the director's interest and the anticipated profit either to him or to the corporation of which he is a director.
"Once self-dealing is established, the burden of proving fairness and good faith is upon the board of directors, except where it is shifted by a valid exculpatory clause. A statutory authorization of transactions in which a director is interested is no more effective than one in a corporate document; it cannot validate an unfair transaction.
"Absent a specific statute-prescribed procedure, a few precautions can minimize the danger of voidability in transactions where an `interested' director is involved. Full disclosure should be made to fellow-directors. If possible, the interested director should not be counted in the quorum and should not vote on the transaction. If his presence be necessary to a quorum or if the transaction cannot be authorized without his vote, or both,  the *799 transaction should not be consummated until ratified at a meeting of shareholders after full disclosure to them. If the interested party is a shareholder, he may vote in favor of ratification and his vote must be counted; but ratification of this nature will not be given the same weight by a court as ratification by a disinterested majority of the shareholders.
"Application of the general principles suggested in this section varies markedly if a remedy can be employed which will do justice to all parties. Where a consideration received by the corporation is adjudged inadequate, but no fraud is found, the court may require an accounting for the difference instead of setting aside a conveyance. When the `contract' price payable by a corporation is excessive, it need pay only a fair price; it may not retain what it has received without any payment at all."
In the case of Pan American Trading & Trapping, Inc. v. Crown Paint, Inc., Fla. 1957, 99 So.2d 705, our Supreme Court held that in an action by a corporation against its former president and another corporation to impress a trust upon certain property which had been purchased by the former president in his own name and later transferred to the corporate defendant, the evidence established that the land was to have been acquired for a valid and significant corporate purpose of the plaintiff and justified an impressment of trust, even though the land might not have been of utmost importance to plaintiff's welfare. The Court, in its opinion, said:
"While, as appellants contend, the land selected might not have been `of the utmost importance to the welfare of the corporation', as in News-Journal Corp. v. Gore, 147 Fla. 217, 2 So.2d 741, 745, the record is clear that the land was to have been acquired for a valid and significant corporate purpose. On review of the whole record, we are of the opinion that the evidence before the chancellor justified the conclusion which he reached, and that it meets the test which the law prescribes for cases of this nature."
Vol. 3, Fletcher Cyclopedia of the Law of Private Corporations, § 977 (Perm.Ed. 1947 Revised Volume) page 458, states:
"Who may attack dealings between interested officers and corporation  In general.
"If the transaction is voidable, it may ordinarily be set aside at the option of the corporation, or of its stockholders in a proper case; and the motives of the corporation in repudiating such a contract are immaterial so far as the other party to the contract is concerned.
"In New Jersey it is emphasized that the option belongs to the corporation and is not exercisable by a minority stockholder unless the contract is ultra vires, fraudulent, or oppressive. Of course, if the corporation neglects or refuses to bring a suit to set aside a contract between itself and a director in the making of which he has acted both for the company and himself, nonconsenting stockholders may institute the suit.
"Creditors or other third persons cannot attack the transaction on this ground, but existing creditors, though not subsequent ones, may attack a deed by the president of the company to himself. A purchase of the bonds of a corporation by its own directors cannot be attacked by purchasers of the corporate property whose conveyance recognizes the validity of the bond issue. The maker of a note cannot set up the defense, when sued by an indorsee, that the transfer by the payee was by a corporation to some of its officers and hence voidable.
"The president of a corporation, even though owning a majority of the *800 stock, cannot escape liability under his personal contract by himself assigning it to the company and then accepting the assignment in behalf of the company."
Section 979 of the above authority at page 460 states:
"Ratification or authorization of dealings with interested officer or director  In general.
"The general rule is that a contract or other transaction between a corporation and its directors or other officers is merely voidable at the option of the corporation, and not absolutely void. It follows that in those jurisdictions, where it is so held, the transaction, if within the powers of the corporation, may be consented to, ratified or acquiesced in by the stockholders, or by the board of directors, if it could be authorized by them. If it is consented to or ratified, with full knowledge of the facts, it is finally and absolutely binding, and neither the corporation nor individual stockholders nor strangers can afterwards sue to set it aside, or otherwise attack its validity. `It is not accurate to say, in such a case, that the contract becomes valid by reason of the ratification by the corporation. No ratification is necessary. The contract stands, unless avoided or repudiated.' The corporation is estopped to attack the transaction where it has been ratified.
"This is also true of contracts and other transactions between two corporations having directors or other officers in common. They are, generally, not absolutely void, but, at the most, merely voidable, and may be rendered binding by ratification or acquiescence on the part of the stockholders.
"If the deal is expressly prohibited by statute, it cannot be ratified by stockholders. Thus, loans to officers or stockholders, where prohibited by statute, cannot be ratified.
"The burden is on a director claiming that a questionable transaction between him and the corporation has been ratified by it, to plead and prove such ratification."
The foregoing general principles relate to the rights of a corporation itself to a remedy for violations by its officials of their fiduciary obligations to the corporation. This is not the question involved in this case. Here the appellant is seeking in effect to have a court of equity determine that he, a stranger to the corporation, can avoid his contract with a director on the grounds that said contract evolved out of an alleged wrong perpetrated on the corporation by said director.
Succinctly stated, the question is, may a third person void an agreement made with a director of a corporation where unfair self dealing of such director is alleged in the purchase of certain property of the corporation and where the facts involved in such an agreement are fully divulged to the corporation's directors?
19 C.J.S. Corporations § 778, p. 147, deals with the topic "Who May Question Transactions," as follows:
"Dealings with corporate property can be questioned only by persons interested.
"A purchase of corporate property by an officer or director cannot be attacked by strangers, but only by a person interested in the corporation and possessing equitable rights; neither can persons who are not creditors, stockholders, or otherwise interested in the corporation but who are strangers question the manner in which the corporate property was disposed of to a director and officer who owns all the corporate stock. So the validity of a chattel mortgage of corporate property by an officer to himself without the consent of all the stockholders can be questioned only by the corporation or its stockholders. The right of creditors *801 to avoid sales of property by or to the corporation or its officers or directors is discussed infra § 854."
Furthermore, we are not apprised of any statute or judicially declared public policy requiring that appellant be permitted the defense of illegality to avoid his contract.
We hold that the lower court correctly ruled in this case.
Affirmed.
SHANNON, C.J., and WHITE, J., concur.