[No. 36959. Department Two. April 30, 1964.]

THE STATE OF WASHINGTON, on the Relation of Hayes Oyster Company, Respondent, v. KEYPOINT OYSTER COMPANY et al., Appellants, COAST OYSTER COMPANY et al., Appellants, SAM HAYES et al., Respondents.*

*Reported in 391 P. (2d) 979.

*Orville C. Hatch*, for appellants Keypoint Oyster Company *et al.*

*William A. Helsell* and *Helsell, Paul, Fetterman, Todd & Hokanson*, for appellant Coast Oyster Company.

*Cook, Flanagan & Berst* and *George S. Cook*, for respondents.

DENNEY, J.†—This is an action to determine ownership of an interest in the capital stock of a corporation under circumstances requiring consideration of corporate morality and ethics in the conduct of the president, manager and director of a corporation in the sale of corporate assets.

The parties are Hayes Oyster Company, an Oregon corporation, hereinafter called Hayes Oyster; Coast Oyster Company, a Washington corporation, hereinafter called Coast; Keypoint Oyster Company, a Washington corporation, hereinafter called Keypoint; Joseph W. Engman, his wife, Edith M. Engman; Verne Hayes and Sam Hayes. Verne Hayes will be referred to as Hayes unless designated otherwise.

The action was commenced against Keypoint to require transfer of 50 per cent of its stock to Hayes Oyster. Keypoint

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

disclaimed ownership of the stock and interpleaded other parties heretofore mentioned.

Hayes was one of the founders of Coast which, over the years, became a public corporation and acquired several large oyster property holdings, among which were oyster beds and facilities for harvesting oysters located at Allyn and Poulsbo, Washington. These properties will hereafter be referred to as Allyn and Poulsbo. Hayes was an officer and director of Coast from its incorporation and was president and manager and owner of 23 per cent of its stock in the year 1960, and a portion of 1961, during which time the events leading to this litigation occurred.

On October 21, 1958, Coast and Hayes entered into a full employment contract by which Hayes was to act as president and manager of Coast for a 10-year period and to refrain directly or indirectly from taking part in any business which would be in competition with the business of Coast, except Hayes Oyster.

Hayes Oyster was a family-owned corporation in which Sam Hayes owned about 75 per cent and Verne Hayes about 25 per cent of its stock.

In the spring of 1960, Coast owed substantial amounts to several creditors and it became apparent that the corporation must have cash if it was to continue in business. Several alternatives were considered by the directors of Coast, among them Hayes' suggestion to sell Allyn and Poulsbo. In June, 1960, Hayes inquired of Engman, a long-time employee of Coast and a man thoroughly familiar with the operation of the oyster properties, if Engman would be interested in purchasing Allyn and Poulsbo. Engman was interested but needed capital with which to commence operations. Engman then asked Hayes if he would "come in" with him. Hayes replied that his full-employment contract with Coast might forbid it, but he would consult Ward Kumm, hereinafter called Kumm, attorney for and longtime director of Coast.

Hayes testified that in July, 1960, he told Engman that he had consulted with Kumm and his brother Sam Hayes and that Hayes Oyster could aid Engman in securing the

initial capital required by Engman. (Kumm denied that he ever talked to Hayes on the matter.) At this time, Engman told Hayes he would attempt to secure a loan from relatives.

On August 4, 1960, an informal meeting was held in Long Beach, California, attended by Hayes, Kumm, and representatives of Van Camp Seafoods Company, owner of 23 per cent of Coast stock, and Rupert Fish Company, a wholly owned subsidiary of British Columbia Packers, Ltd., owner of 38 per cent of such stock. Hayes' plan to sell Allyn and Poulsbo was approved and a meeting of Coast's board of directors was called. On August 11, 1960, the board of directors of Coast approved the sale of Allyn and Poulsbo to Engman at a price of $250,000, nothing down, payment of $25,000 a year, interest at 5 per cent on unpaid balance. Coast was thereby relieved of the expense incident to raising and harvesting oysters at Allyn and Poulsbo and was to receive instead at least $25,000 a year, thus improving Coast's cash position. Hayes informed Engman of the action of the board of directors and put him in possession of Allyn and Poulsbo on August 16, 1960.

Engman instructed Kumm to draw the necessary documents to incorporate the new enterprise to be known as Keypoint Oyster Company, which was to enter into the contract with Coast for the purchase of Allyn and Poulsbo. Engman, his wife, and Sam Hayes were the incorporators, directors and officers of Keypoint. The initial paid-in capital was $500. Certificate No. 1 for 250 shares of stock was issued to Engman, certificate No. 2 for 249 shares to Engman's wife, and certificate No. 3 for one qualifying share to Sam Hayes. Kumm forwarded the stock certificates to Engman, accompanied by a separate assignment in blank of certificate No. 2. Kumm also drew the contract of sale in accordance with instructions from Engman and Coast.

The incorporation of Keypoint was completed on October 1, 1960. Kumm believed that it was necessary, or at least prudent, to secure the approval of the shareholders of Coast to the contract for sale of such valuable properties. A shareholders' meeting was held on October 21, 1960, at

which time Kumm explained the contract. Hayes held proxies, which, with his own stock, authorized him to vote a majority of Coast stock. He did so in favor of a resolution authorizing Hayes to sign the proposed contract on behalf of Coast. Hayes signed as president of Coast; Engman signed as president of Keypoint.

Shortly thereafter, Engman delivered to Verne Hayes Keypoint certificate of stock No. 2, issued to Edith Engman, together with the separate assignment signed by her in which the name of the assignee was left blank. It is undisputed that the words "Hayes Oyster Company" as assignee were not typed in said assignment until July 5, 1962.

We must now retrace our steps to late August and early September, 1960. Engman decided against pursuing his intent to seek a loan from relatives for initial operating capital, and instead made an application to a Poulsbo bank for a loan of $15,000. Engman's financial statement did not satisfy the bank as sufficient to justify such a large loan. Engman then solicited the aid of Hayes, who co-signed a note for $15,000, and the funds secured thereby provided sufficient capital for Engman to commence operations. This note was paid in full on March 13, 1961.

The trial court found that, on September 1, 1960, Hayes and Engman agreed that Hayes Oyster would acquire 50 per cent interest in Keypoint in consideration of Hayes co-signing the note. Hayes did not sign the note as an officer of Hayes Oyster, nor did he reveal to the bank that Hayes Oyster had any interest in the transaction. The trial court also concluded that Hayes' signature on the note was adequate consideration for Engman's promise to give Hayes Oyster a one-half interest in Keypoint. We accept this conclusion.

Hayes made no mention at the meeting in Long Beach on August 4, 1960, or at the Coast directors' meeting on August 11, 1960, that Hayes or Hayes Oyster might acquire some interest in Keypoint. Hayes made no disclosure to any officer, director, stockholder or employee of Coast at the shareholders' meeting or at the time Hayes signed the contract for Coast on October 21, 1960, that Hayes or Hayes

Oyster were to participate in or have a financial interest in Keypoint. Indeed, Coast acquired no knowledge of the Engman-Hayes deal until subsequent to the termination of Hayes' administrative duties as president and general manager of Coast in May, 1961; and subsequent to the time Hayes sold his stock in Coast and the execution of an agreement on March 7, 1962, between Hayes and Coast, by which Hayes' rights and obligations under the 1958 full-employment contract were settled.

On June 23, 1962, Verne and Sam Hayes made demand on Engman for transfer on Keypoint's books to Hayes Oyster of Mrs. Engman's 249 shares.[1] Engman did not comply but made full disclosure to Kumm of his agreement with Hayes to give Hayes or Hayes Oyster a one-half interest in Keypoint and that such had been done. Soon thereafter Engman made formal demand for return of the stock which had been delivered to Verne and Sam Hayes. Coast quickly followed with a formal demand on Verne and Sam Hayes for the Keypoint stock in their possession and return of any benefits received by Hayes from the Engman-Hayes agreement. This case was commenced shortly thereafter.

After a lengthy trial, the trial court acquitted Verne Hayes of any breach of duty to Coast, held the agreement between Engman and Hayes that Hayes Oyster should acquire one-half interest in Keypoint to be valid; held that Engman had no just claim to the stock; and ordered Keypoint to deliver the stock to Hayes Oyster, and transfer it on Keypoint's books.[2] Coast also failed in its effort in the trial court to secure judgment for $5,100 against Hayes for alleged secret profit or benefit secured by Hayes in connection with employment by Keypoint of T. R. Ito at $100 per month and payment to one Kuwahara, a resident of Japan, of $250 per month.

---

[1]Sam Hayes' share of stock had been reissued to Hayes Oyster in order to allow Keypoint to attain a tax advantage.

[2]Hayes Oyster petitioned the Superior Court of King County for a writ of mandamus to compel the transfer. The case was not tried on the limited issues usually associated with a mandamus action, but as an action to determine ownership of 50 per cent of Keypoint stock by three contending parties, viz., Engman, Coast and Hayes Oyster.

Coast, Keypoint and Engman appeal.

Coast does not seek a rescission of the contract with Keypoint, nor does it question the adequacy of the consideration which Keypoint agreed to pay for the purchase of Allyn and Poulsbo, nor does Coast claim that it suffered any loss in the transaction. It does assert that Hayes, Coast's president, manager and director, acquired a secret profit and personal advantage to himself in the acquisition of the Keypoint stock by Hayes or Hayes Oyster in the side deal with Engman; and that such was in violation of his duty to Coast, and that, therefore, Hayes or Hayes Oyster should disgorge such secret profit to Coast.

█ Certain basic concepts have long been recognized by courts throughout the land on the status of corporate officers and directors. They occupy a fiduciary relation to a private corporation and the shareholders thereof akin to that of a trustee, and owe undivided loyalty, and a standard of behavior above that of the workaday world. 3 Fletcher, Cyclopedia of Corporations (1947 ed.) § 838, p. 173; 2 Thompson on Corporations (3d ed.) § 1320, p. 778; *Leppaluoto v. Eggleston*, 57 Wn. (2d) 393, 357 P. (2d) 725; *Arneman v. Arneman*, 43 Wn. (2d) 787, 264 P. (2d) 256, 45 A.L.R. (2d) 370; *Kane v. Klos*, 50 Wn. (2d) 778, 314 P. (2d) 672; *Meinhard v. Salmon*, 249 N. Y. 458, 164 N. E. 545, 62 A.L.R. 1.

This concept is confirmed by the enactment of RCW 23.01.360, which provides:

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

Directors and other officers of a private corporation cannot directly or indirectly acquire a profit for themselves or acquire any other personal advantage in dealings with others on behalf of the corporation. 3 Fletcher, Cyclopedia of Corporations (1947 ed.) § 884, p. 268; 13 Am. Jur. § 998,

p. 950; *Western States Life Ins. Co. v. Lockwood*, 166 Cal. 185, 135 Pac. 496; *Fleishhacker v. Blum*, 109 F. (2d) 543.

■ Respondent is correct in his contention that this court has abolished the mechanical rule whereby any transaction involving corporate property in which a director has an interest is voidable at the option of the corporation. Such a contract cannot be voided if the director or officer can show that the transaction was fair to the corporation. However, nondisclosure by an interested director or officer is, in itself, unfair. This wholesome rule can be applied automatically without any of the unsatisfactory results which flowed from a rigid bar against any self-dealing. 1 Hornstein, Corporation Law and Practice § 439, p. 541; *Corr v. Leisey*, 138 So. (2d) 795 (Fla. 1962).

The trial court found that any negotiations between Hayes and Engman up to the time of the loan by the Poulsbo Bank on September 1, 1960, resulted in no binding agreement that Hayes would have any personal interest for himself or as a stockholder in Hayes Oyster in the sale of Allyn and Poulsbo. The undisputed evidence, however, shows that Hayes knew he might have some interest in the sale. It would have been appropriate for Hayes to have disclosed his possible interest at the informal meeting in Long Beach on August 4, 1960, and particularly at the meeting of Coast's board of directors on August 11, 1960. It is not necessary, however, for us to decide this case on a consideration of Hayes' obligation to Coast under the circumstances obtaining at that time.

Subsequent to the agreement with Engman, Hayes attended the meeting of Coast stockholders on October 21, 1960, recommended the sale, and voted a majority of the stock, including his own, in favor of the sale to Keypoint. On the same day, as president of Coast, he signed the contract which, among other things, required Keypoint to pay 10 monthly payments amounting to $25,000 per year, to pay interest on deferred balance at 5 per cent, to make payments on an option agreement which Coast had with one Smith, to plant sufficient seed to produce 45,000 gallons of oysters per year, inform Coast of plantings, furnish annual reports

to Coast, operate the oysterlands in good workmanlike manner, keep improvements in repair, pay taxes, refrain directly or indirectly from engaging in growing, processing or marketing dehydrated oysters or oyster stew, give Coast first refusal on purchase of Keypoint oysters of 10,000 gallons per year or one-fourth of Keypoint's production. Title was reserved in Coast until payment in full of the purchase price of $250,000 and was subject to forfeiture for failure to pay installments or to fulfill any of the conditions of the contract.

At this juncture, Hayes was required to divulge his interest in Keypoint. His obligation to do so arises from the possibility, even probability that some controversy might arise between Coast and Keypoint relative to the numerous provisions of the executory contract. Coast shareholders and directors had the right to know of Hayes' interest in Keypoint in order to intelligently determine the advisability of retaining Hayes as president and manager under the circumstances, and to determine whether or not it was wise to enter into the contract at all, in view of Hayes' conduct. In all fairness, they were entitled to know that their president and director might be placed in a position where he must choose between the interest of Coast and Keypoint in conducting Coast's business with Keypoint.

Furthermore, after receipt of the Keypoint stock, Hayes instructed the treasurer of Coast to make a payment on the Smith lease-option agreement which Keypoint was required to pay under the provisions of the contract. This action by Hayes grew out of a promise which Hayes made to Engman during their negotiations before the sale to reduce the sale price because of mortality of oysters on Allyn and Poulsbo. There was a clear conflict of interest.

The cases relied upon by respondent are not opposed to the rule condemning secrecy when an officer or director of a corporation may profit in the sale of corporate assets. In *Leppaluoto v. Eggleston, supra,* Eggleston secretly chartered his own equipment to a corporation in which he had one-half interest, for $25,000, without the knowledge of the owner of the remaining stock. We held that Eggleston

was not required to return the $25,000 to the corporation because there was no proof that the charter arrangement was unfair or unreasonable and no proof that Eggleston made any profit on the transaction and that, absent proof of loss to the corporation or profit to Eggleston, no recovery could be had. In the case before us, profit to Hayes or Hayes Oyster in acquiring 50 per cent of Keypoint stock is clear and undisputed.

It was found in *Bay City Lbr. Co. v. Anderson,* 8 Wn. (2d) 191, 111 P. (2d) 771, that a deal between a father, who was president and manager of a corporation, and his son for payment of a bonus to the son for securing purchasers for surplus wood was not secret. The father secured no profit and the bonus was legitimate compensation to the son who was not an officer of the corporation. However, the following statement is found in that case, p. 205:

"We admit that the rule contended for by respondent, that a corporate officer will be held to strict accountability for any individual profits made by him in dealing with assets of the corporation, is correct; but that rule, when applied to the facts in this case, does not justify the conclusion that appellants received any secret profits in this case."

*Central Bldg. Co. v. Keystone Shares Corp.,* 185 Wash. 645, 56 P. (2d) 697, involved a lease by Keystone Shares Corp. of space in a building owned by Central Building Co. at a time when one Hawley was a trustee of Central Building Co. and a prospective trustee of Keystone Shares Corp. There was no secrecy in negotiating the lease, no damage to Keystone Shares Corp. and no profit to Central Building Co. in renting space at the same rental which obtained before the lease.

The business opportunity cases upon which respondent relies, of which *Johnston v. Greene,* 35 Del. Ch. 479, 121 A. (2d) 919, is an example, are not in point. These cases involved the obligation of an officer or director to give the corporation an opportunity to take advantage of a business transaction of which such director or officer had knowledge. The obligation of an officer or director of a corporation in such instance is far less rigid than in the case

of personal interest of an officer or director in sale of corporate assets.

■ It is true that Hayes hypothecated his stock in Coast to one of Coast's creditors in early August, 1960. Undoubtedly, this aided Coast in placating its creditors at that time and showed absence of an intent to defraud Coast. It is not necessary, however, that an officer or director of a corporation have an intent to defraud or that any injury result to the corporation for an officer or director to violate his fiduciary obligation in secretly acquiring an interest in corporate property.

In quoting from 13 Am. Jur. § 1002, p. 955, in the case of *Lycette v. Green River Gorge, Inc.,* 21 Wn. (2d) 859, 153 P. (2d) 873, we said, p. 865:

" 'Actual injury is not the principle upon which the law proceeds in condemning such contracts. Fidelity in the agent is what is aimed at, and as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. . . .' "

Respondent asserts that action by Coast shareholders was not necessary to bind Coast to the sale because it had already been approved by Coast's board of directors. Assuming this to be true, Hayes' fiduciary status with Coast did not change. He could not place himself in an adverse position to Coast by acquiring an interest in the executory contract before the terms of said contract had been performed by Keypoint. *Cook v. Berlin Woolen Mill Co.,* 43 Wis. 433; *Farwell v. Pyle-Nat. Elec. Headlight Co.,* 289 Ill. 157, 124 N. E. 449, 10 A.L.R. 363.

■ The trial court found that Coast's release of Hayes on March 7, 1962, was not binding on Coast because there was no disclosure of Hayes' or Hayes Oyster's interest in Keypoint. We agree. A corporation cannot ratify the breach of fiduciary duties unless full and complete disclosure of all facts and circumstances is made by the fiduciary and an intentional relinquishment by the corporation of its rights. *Kane v. Klos,* 50 Wn. (2d) 778, 784, 314 P. (2d)

672; *Wool Growers Ser. Corp. v. Simcoe Sheep Co.*, 18 Wn. (2d) 655, 697, 140 P. (2d) 512.

■ Coast had the option to affirm the contract or seek rescission. It chose the former and can successfully invoke the principle that whatever a director or officer acquires by virtue of his fiduciary relation, except in open dealings with the company, belongs not to such director or officer, but to the company. Nothing less than this satisfies the law. 3 Fletcher, Cyclopedia of Corporations (1947 ed.) § 888, p. 289.

2 Thompson on Corporations (3d ed.) § 1339, p. 822, has this to say:

" . . . The corporation may compel a director to account for all profits made by him in dealings with the corporation and this without disaffirming the contract under which the profits were made. . . ."

This rule appears to have universal application and is recognized in this state. *Leppaluoto v. Eggleston, supra*; *Kane v. Klos, supra*.

The trial court's finding that Hayes acted on behalf of Hayes Oyster in all of his negotiations with Engman subsequent to July, 1960, does not alter the situation. Sam Hayes knew that Verne Hayes was president and manager of Coast and owed complete devotion to the interests of Coast at the time Verne Hayes first approached him on the subject of sharing with Engman in the purchase of Allyn and Poulsbo. Sam Hayes knew and agreed that any interest of Verne Hayes or Hayes Oyster in Keypoint was to be kept secret and revealed to no one, including Coast. Sam Hayes authorized Verne Hayes to proceed with the deal on behalf of Hayes Oyster on this basis. Verne Hayes became the agent of Hayes Oyster in negotiating with Engman.

■ It is well settled that a corporation is chargeable with constructive notice of facts acquired by an agent while acting within the scope of his authority. *Post v. Maryland Cas. Co.*, 2 Wn. (2d) 21, 97 P. (2d) 173. Verne Hayes was the moving spirit in the transaction with Engman. Hayes Oyster cannot claim immunity from Verne Hayes' fiduciary breach to Coast.

Hayes Oyster gave no consideration for any interest in Keypoint. It did not even become liable on the Poulsbo Bank note. Every sound consideration of equity affects Hayes Oyster as well as Verne Hayes. Neither can profit by the dereliction of Verne Hayes. *Collins v. Hoffman,* 74 Wash. 264, 133 Pac. 450.

In *Ryan v. Plath,* 18 Wn. (2d) 839, 863, 140 P. (2d) 968, we said:

"In any event, the respondent corporation could not, in this instance, claim to be a *bona fide* purchaser of the property, for all of its officers and stockholders were fully conversant with the facts and circumstances which led to the purchase by the corporation, and therefore it must be held to have had knowledge of the breach of trust and have adopted the means by which the property was procured. *Saar v. Weeks,* 105 Wash. 628, 178 Pac. 819."

At the time Engman went into possession of Allyn and Poulsbo, Hayes suggested that Engman pay $100 per month to T. R. Ito to act as a watchman for some of the oyster beds which lay in front of Hayes' home. Hayes also suggested to Engman the payment of $250 per month to one Kuwahara for inspection of any oyster seed purchased in Japan. Engman complied with both requests. Coast now attacks these payments as a secret profit or benefit secured by Hayes.

This presents a factual issue which was resolved by the trial court in favor of Hayes. There is substantial evidence that T. R. Ito rendered some service to Keypoint in guarding a portion of Keypoint's oyster beds. Coast failed to convince the trial court that Keypoint's payment to Kuwahara in Japan was for the sole purpose of aiding Hayes in support of the family of his prospective bride. Substantial evidence supports the finding of the trial court on this issue. Coast must fail in its effort to recover a $5,100 judgment against Hayes.

Engman contends that the agreement between him and Hayes was without consideration, secured by undue influence, business compulsion and that the agreement was against public policy, void, and therefore the court should leave the parties where it finds them.

The Engman-Hayes agreement was not void, but voidable at the election of Coast.

Substantial evidence supports the trial court's findings that Verne Hayes did not use undue influence or business compulsion on Engman in securing one-half interest in Keypoint. Hayes gave valuable consideration for Engman's promise to give Hayes or Hayes Oyster one-half interest in the new venture by pledging his credit in securing initial capital for the new business.

■ Engman's version of the final agreement between him and Hayes was that immediately after Coast's directors' meeting, Hayes made a demand for one-half interest in Allyn and Poulsbo, that Engman employ Ito, enter into an agreement with Kuwahara and that the deal should be kept completely secret. He testified that Hayes Oyster was never mentioned as a party to the transaction. Engman is in no position to contend that his agreement with Hayes was against public policy and void. He was a party to it. Coast was not a party to any illegal contract and its equitable claim has been established.

■ It is generally held that the purchase of corporate property by an officer or director can be questioned only by persons possessing equitable rights. Engman can acquire no equitable right because of Hayes' dereliction of duty to Coast. 19 C.J.S. § 778(a), p. 147.

The decree and judgment of the trial court denying Engman any right or interest in the disputed stock is affirmed. The judgment denying Coast recovery on the Ito and Kuwahara phase of the case is affirmed. The decree ordering issuance of a new certificate of stock for 250 shares of Keypoint Oyster Company to Hayes Oyster Company is reversed with direction to order Keypoint Oyster Company to issue a new certificate for 250 shares of its stock to Coast Oyster Company and cancel the certificates heretofore standing in the name of or assigned to Hayes Oyster Company.

Appellant Coast Oyster Company will recover costs against Verne Hayes, Sam Hayes and Hayes Oyster Company.

WEAVER, HUNTER, HAMILTON, and HALE, JJ., concur.

July 21, 1964. Petition for rehearing denied.