DECISION
The facts and travel of this matter are set out with particularity in a Decision issued by this Court on June 29, 1998 (Decision). Said Decision was in response to the receipt of the Special Master's Report filed on the 19th day of December 1997. Thus the Court will not repeat in toto the facts and travel, but may refer to selected portions if necessary.
Pursuant to a Consent Order of September 25, 1996 a Judge of this Court appointed a Special Master ". . .to determine the fair market value of the stock of the defendant corporation." The Consent Order was specific in its mandate:
 "In the above matter the following shall enter by agreement of the parties:
 1. The Court shall appoint a special master to determine the fair market value of the stock of the defendant corporation."
The remaining paragraphs of the Consent Order (2 through 6) dealt with the scheduling of proceedings before the Master; the filing of objections to the Master's findings; the exercise of options to purchase certain properties owned by the corporation and the time frame in which the defendants must comply with the plaintiffs motion to compel the production of documents (See consent order entered on September 26, 1996).
After his appointment, the Special Master held hearings, at which the parties presented evidence both testimonial and documentary, and on the 19th day of December 1997, the Report of the Special Master was issued.
Plaintiffs filed their objections to the report on December 31, 1997 followed by the Defendants' objections on January 29, 1998. Memoranda were also filed by the parties in support of their respective positions; the plaintiffs filed theirs on March 6, 1998, the defendants on April 7, 1998; to which the plaintiffs responded on June 26, 1998.
This Court rendered its Decision on the Master's Report on the 29th of June, 1998. Said Decision accepted the report in part and rejected it in part, and remanded the matter for further finding of fact on certain other issues.
Notice of appeal was filed in the Supreme Court on August 5, 1998, followed by a pre-briefing conference (Weisberger, J.) on October 26, 1999, and on that date the appeal was dismissed without prejudice and the case remanded to this Court for further proceedings.
By agreement, the parties, through counsel, conferenced the case with the Court on February 24, 2000 in an attempt to reach amicable resolution and, at the request of counsel, the Court withheld further action for the purpose of additional settlement discussion. It appears that a good faith effort at resolution was made, but none was realized, and final oral argument was scheduled and heard in this controversy on March 2, 2000.[1]
This Court has reread the Master's initial and supplemental reports; it has examined and analyzed the various documents, including depositions in the file, relied upon by the Master. It has, in addition to its own notes, read transcripts of hearings held on June 12, 1998 and March 2, 2000. This Court also reviewed all authorities cited by the litigants and finds that:
 1.) Its conclusion that the Special Master's presumption of a sale of corporate assets in determining the fair market value of the stock of a closely held corporation to be an error of law was correct, and thus is affirmed.
 2.) Its conclusion that the Special Master's findings as to the value of the property of the defendant corporation were supported by substantial evidence were not clearly erroneous was correct, thus is affirmed.
 3.) Its conclusion that the Master's application of the doctrine of laches was an error of law was correct, thus is affirmed.
 Remand Issues 1.) In his report the Special Master awarded plaintiff $5,251.48 of the total amount of $79,424.04 for corporate funds expended by defendant Marie Reed. This Court remanded that issue to the Master since it determined that the Master made no findings that the amounts not awarded plaintiff were disbursed by Mrs. Reed for corporate purpose.
 2.) The Master denied any award to plaintiffs for monies allegedly misappropriated by defendant Reed prior to 1991. He reasoned that William Dillworth was a director and officer of the corporation until his death. As such, "he had at least constructive knowledge of the books and records of the corporation. There is nothing in the record of the corporation to indicate Mr. Dillworth objected to the actions of Mrs. Reed. Indeed, Mrs. Reed's testimony is that `he was aware of the practice.'" (Master's Rept. p. 11). This Court, on remand, instructed the Master to provide it with findings of fact in support of his conclusions.
 3.) The Special Master awarded Marie Reed a 5% management fee for services rendered the corporation from 1991 through 1996. The award total of $27,051.00 was based upon the gross rents of $541,101.00 collected for that period. This issue was also remanded for additional findings.
The Master's supplemental report was read and analyzed by this Court, and with due respect for his attempt to provide clarification of his original findings, his effort is of little help. The supplemental report, in this Court's opinion, is merely a restatement of his initial report on these issues, and in consequence is rejected.
Additionally, and perhaps of greater importance, is the fact that both reports are silent about what appears to be a breach of Mrs. Reed's fiduciary obligation to the corporation and it's minority shareholders. It is well established that corporate officers stand in a fiduciary relation toward the shareholders and are bound to exercise the utmost good faith towards them. Eaton v. Robinson,19 R.I. 146 (1895); Boss v. Boss, 98 R.I. 146 (1964); Sladen v.Rowse, 115 R.I. 444 (1975); see also, 18B Am. Jur. 2D, Corporations, § 1689. There is little question that Mrs. Reed used substantial corporate funds for her own benefit.[2]
There is also a body of authority that states that a misappropriation or misapplication of corporate funds is not capable of ratification by the majority stockholder, Keenan v. Eshleman,23 Del. Ch. 234, 2 A.2d 904, 120 Aur 227, and only a unanimous shareholder vote could ratify such activity. Arthur Lipper Corp. v.SEC., 547 F.2d 171 (CA.2). Nor can a corporation ratify a breach of fiduciary duties unless the fiduciary makes a full and complete disclosure of all facts and circumstances and the corporation intentionally relinquishes its rights. State ex rel. Hayes OysterCo. v. Keypoint Oyster Co., 64 Wn.2d 375, 391 P.2d 979; see also, 18B Am. Jur. 2D, Corporations, § 1745.
It is the judgment of this Court that all three remand issues implicate the consideration of the issue of whether or not Mrs. Reed breached her fiduciary responsibility to Stone Gables, Inc., and any award granted or denied without that consideration is tenuous at best. The record in this case is virtually barren of any evidence that the instant corporation ever ratified the unauthorized acts of Mrs. Reed, and the Master's conclusion that William Dillworth "had at least constructive knowledge of the books and records of the corporation" (pp. 11, 12, Master's Report); or that "there is nothing in the record of the corporation to indicate that Mr. Dillworth objected to the actions of Mrs. Reed." (pp. 11, 12 Master's Report; § 2c, k, 3 c, Supp. Report) fails to satisfy this Court's concern regarding Mrs. Reed's possible breach of trust and its impact upon the issues to be decided here. Certainly the purported conduct of Mr. Dillworth, unless more is known, does not reach the level of corporate ratification. Whether an implied ratification through acquiescence has occurred is to be decided by the trier of fact.Barnes v. Treece, 15 Wn. App. 437, 549 p. 20 1152 ; see also See-TeeMining Corp. v. National Sales, Inc., 76 N.M. 677, 417 p. 20 810;Johnson v. Community Development Corp., 222 N.W.2d 847; Kagan v.Levenson, 334 Mass. 100, 134 N.E.2d 215.
The Special Master awarded Mrs. Reed a 5% management fee for services rendered Stone Gables, Inc. from 1991 through 1996. (See Remand Issue 3, supra). A corporate officer may, under usual circumstances, be entitled to compensation for performing the duties of his or her office. However, that officer, like agents or trustees, may forfeit its right thereto by maladministration or a breach of his or her fiduciary duty to the corporation. Kassab v.Ragnar Benson, Inc., 254 F. Supp. 830
(WD.Pa.), Citron v. Merritt-Chapman Scott Corp., 407 A.2d 1040
(Del. Sup.), Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1,449 N.E.2d 320. Thus the propriety of Mrs. Reed's official conduct in the context of this case, has a direct bearing on whether she is entitled to any award for management services.
In sum, this Court affirms the conclusions of its decisions of June 29, 1998 and refers all other issues, including that of lawn and utility payments, punitive damages, and alleged misappropriation of monies from corporate laundry machines to the trier of fact for trial.
This Court has attempted, within the parameters of the law mandated, to reach a result both equitable and just after a full review of the record presented, and renders this Decision fully aware of the exacting standard imposed by the clearly erroneous rule.
Counsel will prepare an order consistent with this Decision.
[1] It should be noted that following remand, and during the pendency of the Supreme Court appeal, the parties filed additional memoranda in support of their respective positions.
[2] The Special Master awarded $64,143.72 to defendants for items identified as "I. Payments appropriated to Marie Reed's personal use" on defendant's Exhibit H. Further, he awarded $5,251.48 to plaintiff for items identified as "II Payments with no substantiation proving payment for Stone Gables, Inc. and highly questionable" on defendant's Exhibit H. (See Master's Report p. 11).