COURT OF APPEALS
STATE OF WASHINGTON

2013 AUG 19 PM 12: 12



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ROBERT C. LIFE and THERESA E.
LIFE, husband and wife, and their
marital community,

        Appellants,

        v.

SUNBANKS, LIMINTED, dba
SUNBANKS LAKE RESORT,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 68748-4-I

DIVISION ONE

UNPUBLISHED

FILED: August 19, 2013

      Cox, J. — A premises liability action requires the plaintiff to prove notice to the owner of the premises where there is an alleged dangerous condition.[1] Such notice may be through an agent, acting within the scope of the agent's authority.[2]

      Here, the trial court excluded, on hearsay grounds, evidence of a statement by a witness to an alleged agent of the land owner, Sunbanks, Ltd. The statement was to the effect that a dangerous condition of the land existed. Because the purpose of offering this statement was to prove notice, not the truth of the statement, we reverse and remand for trial.

---

[1] Ingersoll v. DeBartolo, Inc., 123 Wn.2d 649, 652, 869 P.2d 1014 (1994).

[2] See State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co., 64 Wn.2d 375, 386, 391 P.2d 979 (1964).

Robert and Theresa Life (collectively "Life") commenced this premises liability action based on events in 2007 on land owned by Sunbanks.

In 2007, Life attended a music festival at a private resort operated by Sunbanks in Grant County. While at the resort, Robert Life claims that he fell when his feet became entangled in some branches growing out of a tree stump. Robert Life asserts that he sustained significant injuries from the resulting fall.

This lawsuit followed in 2010. Life claimed Sunbanks was negligent for leaving tree stumps in the ground that "created a tripping hazard to business invitees."

Sunbanks moved for summary judgment arguing, among other things, that it did not have notice of the tree stump. In opposition to the motion, Life submitted a declaration from a volunteer security guard for the festival, Lisa Eby.

Eby testified that earlier on the day that Life fell, she walked through the resort. She observed some recent landscaping work in the resort's campground, including the removal of some trees. During her walk, Eby noticed the same tree stump that allegedly caused Life to fall. Eby testified that she told a groundskeeper that the stump was "an accident waiting to happen." She did not know the groundskeeper's name, but she knew him to be a "regular employee" of Sunbanks.

The trial court denied Sunbanks's motion for summary judgment, and the case proceeded to a jury trial. The jury returned a verdict for Sunbanks.

Life appeals.

## STANDARD OF REVIEW

Life argues that the standard of review in this case is de novo. That is not the law.

This court reviews de novo a trial court's interpretation of an evidentiary rule as a question of law.[3] "Once the rule is correctly interpreted, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion."[4] "Abuse of discretion requires the trial court's decision to be manifestly unreasonable or based on untenable grounds or untenable reasons."[5]

Here, Life appeals the trial court's ruling to exclude Eby's testimony. Specifically, Life argues Eby's statement to the groundskeeper is not hearsay. Thus, the exclusion of this evidence is reviewed for abuse of discretion.

Life argues that the trial court's application of incorrect legal standards in its decision to exclude Eby's statements should be reviewed de novo. That is simply incorrect. A trial court's application of an incorrect legal standard is evidence that the trial court exercised its discretion on untenable grounds or for untenable reasons.[6] De novo review of the evidentiary ruling is simply not warranted.

---

[3] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

[4] Id.

[5] State v. Athan, 160 Wn.2d 354, 375-76, 158 P.3d 27 (2007).

[6] See Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006) ("A discretionary decision rests on 'untenable grounds' or is based on 'untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard . . . .").

3

## HEARSAY

Life argues that the trial court abused its discretion when it excluded Eby's statements to a groundskeeper of the premises. We agree.

As an initial matter, Life only argues on appeal that the trial court abused its discretion when it excluded Eby's statements to the groundskeeper. Life does not challenge the trial court's exclusion of the groundskeeper's responsive statements to Eby. Thus, these latter statements are not before us. We consider only Eby's statements.

We address the trial court's ruling excluding Eby's statements in two parts. First, we consider whether Eby's out-of-court statements to the groundskeeper are inadmissible hearsay. Second, assuming that Eby's statements are not hearsay and were offered to prove notice, we consider whether Life was also required to prove that the groundskeeper was a "speaking agent" of Sunbanks.

We consider each question below.

### Statements Offered for a Purpose Other than the Truth

Life argues that Eby's statements to the groundskeeper were not inadmissible hearsay because they were offered for a purpose other than proving their truth. We agree.

Under ER 801(c), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible unless a specific exception applies.[7]

---

[7] ER 802.

But if an out-of-court statement is not offered to prove "the truth of the matter asserted," the statement is not hearsay.[8] As such, an out-of-court statement may be offered to show that a person who heard it received notice or had knowledge of some fact.[9]

For a premises liability action, "a possessor of land" can only be "liable to a business invitee for an unsafe condition of the land" if the possessor had "actual or constructive notice of the unsafe condition."[10]

Here, Eby's statements to the groundskeeper that the tree stump "should be removed, or at least cordoned off before the concert" were not offered to prove the truth of the matter asserted. Rather, the statements were offered to prove that Sunbanks had notice of an allegedly dangerous condition on the premises: the tree stump. Thus, Eby's statements were not hearsay.

The trial court abused its discretion by excluding this evidence on the ground that it was inadmissible hearsay.

Sunbanks argues that Eby's statements were inadmissible hearsay. But it fails to explain why Eby's statements were offered to prove the truth of the

---

[8] State v. Williams, 85 Wn. App. 271, 280, 932 P.2d 665 (1997).

[9] See, e.g., Price v. State, 96 Wn. App. 604, 618, 980 P.2d 302 (1999) (concluding that a woman's out-of-court statements to DSHS was not offered to prove the truth of the matter asserted but were offered "to establish that DSHS was on notice of the biological mother's possible drug and alcohol abuse and failed to disclose this information" to the future adoptive parents); see also 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.15 (5th ed. 2012) ("Perhaps most commonly, out-of-court statements have been admitted [to] show that the hearer or reader received notice of some fact, or had knowledge of some fact, as a result of the statement in question.").

[10] Ingersoll, 123 Wn.2d at 652.

statement that a dangerous condition existed on the land. On this ground alone, this argument is unpersuasive.

Instead, Sunbanks argues that Life could not offer the statements to prove notice because he failed to prove that the groundskeeper was Sunbanks's "speaking agent." We address this argument after first addressing, in more detail, agency.

*Agency*

First, if Eby's statements to the groundskeeper were offered to prove notice, no more, Life must ultimately prove that the groundskeeper was Sunbanks's agent.[11] Life argues that the existence of an agency relationship between the groundskeeper and Sunbanks was ultimately a question of fact for the jury, and that the trial court abused its discretion when it excluded Eby's statements. But this argument excludes consideration of the trial judge's role in determining a question of preliminary fact under ER 104(a).

"An agency relationship may exist, either expressly or by implication, when one party acts at the instance of and, in some material degree, under the direction and control of another."[12] "Both the principal and agent must consent to the relationship."[13]

---

[11] See Hayes Oyster Co., 64 Wn.2d at 386.

[12] Hewson Const., Inc. v. Reintree Corp., 101 Wn.2d 819, 823, 685 P.2d 1062 (1984).

[13] Id.

"Under principles of agency, an agent can bind a principal when he or she has either actual or apparent authority to do so."[14] Further, if the principal is a corporation, it is well established that the corporation can be charged with "constructive notice of facts acquired by an agent while acting within the scope of his authority."[15]

The party asserting the existence of an agency relationship bears the burden of proof.[16]

Here, Eby testified that she believed the groundskeeper was an employee of Sunbanks. In her amended declaration in support of Life's opposition to summary judgment, Eby stated:

> In previous years he had been one of the managers of the resort and he was always around as a maintenance/groundskeeper sort of a person. I would recognize him again if I was to see him . . . . I do not know his name but I am positive that he was a regular employee of the Sunbanks Resort and that he had previously been a manager and also did maintenance type of work around the campgrounds.[17]

This testimony raises questions of fact whether the groundskeeper was Sunbanks's agent and whether the groundskeeper was acting within his scope of authority.

---

[14] State v. Morse, 156 Wn.2d 1, 12 n.3, 123 P.3d 832 (2005).

[15] Hayes Oyster Co., 64 Wn.2d at 386.

[16] O'Brien v. Hafer, 122 Wn. App. 279, 284, 93 P.3d 930 (2004).

[17] Clerk's Papers at 130-31.

We note that neither party addresses a threshold issue: who makes the preliminary factual determinations necessary to determine the admission of Eby's statements. We address this issue to provide guidance on remand.

Preliminary questions of fact concerning the admissibility of evidence are determined by the court.[18] In making its determination, the court is not bound by the rules of evidence except as to privileges.[19]

The trial court did not address this question because it excluded the evidence on hearsay grounds. The court will have the opportunity to address this question on remand.

Depending on the trial court's determination of the preliminary question of fact, Eby's statements to the groundskeeper may be admitted on remand. The trial court would then leave the jury to accept or reject the statements according to "whatever criteria the jury deems proper."[20]

We next consider whether the trial court's ruling that Life could not prove that the groundskeeper was Sunbanks's "speaking agent" was relevant. We hold that it was not for purposes of establishing notice.

Sunbanks argues that Eby's statements could not prove notice unless Life could establish that the groundskeeper was Sunbanks's agent *and* had authority to bind Sunbanks. It cites ER 801(d)(2)(iv), The Courtroom Handbook on

---

[18] ER 104(a); see Condon Bros., Inc. v. Simpson Timber Co., 92 Wn. App. 275, 289, 966 P.2d 355 (1998) ("With a hearsay-related question of preliminary fact, the judge is the sole decision-maker . . . .").

[19] ER 104(a).

[20] Condon, 92 Wn. App. at 289.

Washington Evidence,[21] and Condon Bros., Inc. v. Simpson Timber Co.[22] to support this assertion.

ER 801(d)(2)(iv) addresses party-opponent admissions, and the Handbook citation focuses on the admissibility of a statement made by an agent.[23] This authority would control whether the *groundskeeper's statements to Eby* were admissible. But, as noted above, that issue is not before us. The issue is whether *Eby's statements to the groundskeeper* were admissible.

Similarly, Condon Bros. is inapplicable.[24] There, the issue was whether an employee's statement fell within the party-opponent hearsay exemptions of ER 801(d)(2)(iii) or (iv).[25] Division Two explained that whether the employee's statement was admissible depended on whether the employee was a "speaking agent" of his employer.[26] But as just discussed, the issue in this case is not whether the groundskeeper's statement to Eby is admissible. Rather, the focus is properly on Eby's statements to the groundskeeper. Thus, whether the groundskeeper was a "speaking agent" is analytically irrelevant to the

---

[21] 5D KARL B. TEGLAND, COURTROOM HANDBOOK ON WASHINGTON EVIDENCE ER 801(d)(2) (2011-2012 ed.).

[22] 92 Wn. App. 275, 966 P.2d 355 (1998).

[23] Brief of Respondent at 6 ("A statement by an agent is admissible against the principal *only* if the agent was acting within the scope of his or her authority in making the statement.") (quoting 5D TEGLAND, supra, at 417).

[24] Id. at 8 (citing Condon Bros., 92 Wn. App. at 289-90).

[25] Condon Bros., 92 Wn. App. at 284.

[26] Id. at 285.

admissibility of Eby's statement providing notice of a dangerous condition of the land.

Contrary to the trial court and Sunbanks's assertions, there is no need for Eby to know the "individual identity" or name of the groundskeeper in order to testify that she provided notice to Sunbanks's agent. As evidenced by Eby's amended declaration, Eby was prepared to provide the reasons she believed the groundskeeper was Sunbanks's agent.

Sunbanks also contends that Eby's "inability to positively identify the unknown groundskeeper added another level of concern as to the credibility and reliability of the testimony . . . ."[27] It cites the trial court's ruling to support this argument:

> How can you possibly cross examine or discover the person that purportedly was making the statement, that groundskeeper, if you don't even know who it is? . . . [Y]ou don't have the personal identity, you don't have anybody to depose, [and] you don't have anybody to test on cross-examination.[28]

But, as Life points out, this portion of the trial court's ruling was addressing the exclusion of the groundskeeper's statements to Eby, which is not at issue here. And, in any event, admissibility, not credibility, is the issue. Once the former is determined by the court, the jury will determine the latter.

Finally, Sunbanks argues that Eby had no basis for believing that the groundskeeper was Sunbanks's agent. As we have already explained, the record does not support this assertion. We consequently reject it.

---

[27] Brief of Respondent at 8.

[28] Id. at 9 (citing Report of Proceedings (Feb. 15, 2012) at 32).

10

In sum, the trial court abused its discretion in excluding Eby's statement to the groundskeeper. It was material to the issue of notice, a proof requirement for Life's premises liability claim. The statement was not offered to prove the truth of the matter asserted.

Life also argues that the trial court's exclusion of Eby's statements to the Sunbanks's manager was an abuse of discretion. We need not reach this issue because we reverse and remand for trial. The circumstances underlying this ruling in the first trial will not arise again since the parties now know of Eby's alleged statements to Sunbanks's manager.

## HARMLESS ERROR

Life argues that the trial court's erroneous exclusion of Eby's statements to the groundskeeper was not harmless. We agree.

Error is only grounds for reversal if it is prejudicial, which in matters of evidentiary error means "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[29]

An error in the exclusion of evidence is harmless if the excluded evidence is merely cumulative of other evidence that was admitted.[30]

Here, one of the central issues at trial was whether Sunbanks had notice of the tree stump. In its trial brief, Sunbanks asserted that there was no notice to

---

[29] State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

[30] Brown v. Spokane County Fire Protection Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983); In re Estate of Foster, 55 Wn. App. 545, 553, 779 P.2d 272 (1989).

Sunbanks or its management. Life asserted in his trial brief that Sunbanks had actual and constructive notice of the tree stump. To prove actual notice, Life was prepared to offer Eby's statements to the groundskeeper. There is a reasonable probability that the outcome of the trial would have been materially affected if the exclusion of this evidence had not occurred.

Sunbanks argues that there was "sufficient evidence to support the Jury's verdict" even if Eby's statements to the groundskeeper or the manager were admitted. It contends that "[n]otice is but one element of a four-part test associated with the duty owed by a landowner to an invitee" and "[d]uty is one of the four elements of negligence."[31] But as Sunbanks acknowledged during trial, in a premises liability case, "if there's any issue that is central to a liability case, it is" notice.[32] As noted above, "a possessor of land" can only be "liable to a business invitee for an unsafe condition of the land" if the possessor had "actual or constructive notice of the unsafe condition."[33] Thus, the trial court's improper exclusion of Life's only evidence of actual notice was not harmless. It constitutes reversible error.

Sunbanks also contends that the jury's verdict in favor of Sunbanks was supported on its theory that the tree stump was "an open and apparent condition

---

[31] Brief of Respondent at 14.

[32] Report of Proceedings (Feb. 15, 2012) at 18 (during its motion to exclude Eby's statements to Sunbanks's manager, Sunbanks's attorney stated, "And so we think that this is obviously notice of a hazardous condition. In a premises liability case, if there's any issue that is central to a liability case, it is this.").

[33] Ingersoll, 123 Wn.2d at 652.

and that Mr. Life knowingly encountered the hazard when he chose to walk across a dark campground, without a flashlight, while wearing flip-flops."[34] But the jury's verdict could also have been supported on the theory that Sunbanks did not have notice of the tree stump. We will not speculate why the jury came to its verdict.

## ATTORNEY FEES

Sunbanks seeks attorney fees and expenses on appeal pursuant to RAP 18.1. It asserts that it is entitled to fees and expenses because Life has not presented any new evidence or arguments on appeal. That is not a recognized basis for awarding fees. In any event, Life has been successful on appeal. Accordingly, we deny this request.

We reverse the judgment and remand for a new trial.

_____
Cox, J.

WE CONCUR:

_____          _____
                                    Spearman, A.C.J.

---

[34] Brief of Respondent at 14.

13