(118 So. 753)

## NEW YORK LIFE INS. CO. v. McLEAN.
### (3 Div. 848.)

Supreme Court of Alabama.   Nov. 22, 1928.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

BROWN, J. The defendant, appellant here, issued to the plaintiff two policies of life insurance embodying a permanent disability clause in the following words:

"*Permanent Disability: And the Company agrees to pay to the Insured* one-tenth of the face of this policy, per annum, during the lifetime of the Insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1. hereof.

\* \* \* \* \* \* \* \*

"*Section 1.—Total and Permanent Disability Benefits:* Whenever the Company receives due proof, before default in the payment of premiums, that the Insured, before the anniversary of the policy on which the Insured's age at nearest birthday is sixty years and subsequent to the delivery thereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or both feet, or of one entire hand and one entire foot, to be considered as a total and permanent disability without prejudice to other causes of disability—then

"1. *Waiver of Premium.*—Commencing with the anniversary of the Policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the Policy, the Company will not deduct the premiums so waived. The loan and surrender values provided for under Sections 3 and 4 shall be calculated on the basis em-

ployed in said sections, the same as if the waived premiums had been paid as they became due.

"2. *Life Income to Insured.*—One year after the anniversary of the Policy next succeeding the receipt of such proof, the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and *continued disability* of the Insured. Such income payments shall not reduce the sum payable in any settlement of the Policy. The Policy must be returned to the Company for indorsement thereon of each income payment. If there be any indebtedness on the Policy, the interest thereon may be deducted from each income payment."

The plaintiff, contending that he had become permanently disabled by disease, made proof before default in the payment of any premium, and, after investigation, payment was refused by the company on the ground that plaintiff was not permanently disabled, within the meaning of the policy. The plaintiff thereafter paid premiums as they matured, and this suit was brought to recover the stipulated one-tenth of the face of the policies and the premiums paid after proof of disability was submitted.

The sole question litigated on the trial was whether or not the plaintiff by disease had become wholly disabled, "so that he is and will be, presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit" within the meaning of the policy, and presented in a large measure a question of fact. Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; U. S. Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 468; Ellis v. New York Life Ins. Co., 214 Ala. 166, 106 So. 689; Ætna Life Ins. Co. v. Lasseter, 153 Ala. 630, 45 So. 166, 15 L. R. A. (N. S.) 252.

If the insured's physical condition, as a result of the disease, is such that common care and prudence requires that he desist from transacting business, and his condition is presumably permanent and continuous, he is permanently and totally disabled, within the meaning of the contract, though he may not be physically disabled to perform occasional acts connected with his business, profession, or occupation. U. S. Casualty Co. v. Perryman, supra.

This interpretation of the contract is sustained by the fact that the policy provides "the permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot," shall be considered a total and permanent disability without prejudice to other causes of disability. It is a matter of common knowledge that a person so afflicted is not wholly disabled from transacting some act of business or engaging in gainful work.

The evidence shows that the plaintiff, a physician and surgeon, is suffering from chronic rheumatoid arthritis, a disease usually affecting persons of middle and old age, with characteristics of increasing swelling and stiffness and deformed joints, with inability to use the same, permanent in character, and gradually growing more debilitating; that he is also afflicted with a congenital malformation of the eyeballs, which produces a high degree of short sightedness, and, in addition, has amblyopia and muscular weakness of the muscles of the eyes, disabling him to use his eyes for any length of time without blurring of the vision, both diseases of a permanent and incurable character, and incapacitated him to follow the practice of his profession.

The plaintiff testified:

"I am a graduate physician. I ceased active practice of that profession about 1916. I think I know my physical condition. Upon taking any exercise where any muscular tension is brought about the following day my hands are sore, and, if I walk extensively—I say extensively, I can't walk over a mile * * * —my feet become sore upon standing. * * * My joints become painful upon the weight resting upon them, and in walking * * * I walk upon the back of my foot, largely, and around the outside of my toes, to keep weight off of them, that is to keep under muscular attention in order to regulate that specific step—I want to keep the weight off of my joints. Without any accidental step and irregularity in the ground, or something, I can go along without any particular pain, but if there is any irregularity in the ground, and a weight should happen to be thrown upon either of my great toes, there is considerable pain following it. And frequently—it is not constant—my back will pain from my lower ribs down to my pelvis all through the lumbar region. * * * Standing upon a level surface, my toes, the weight on these joints, will become painful. I can stand a very little while without pain. * * * I shift from first one foot to the other. I can't stand with my weight on either foot for any length of time, just a few minutes. * * * To write, to hold a bridle rein, to grip my hand tight enough to hold it securely, my hand will pain me afterwards; also my elbow joints. * * * I have been in this condition which I have described for the last two years. There has been no improvement of my condition, but there has been lessening of pain on continuous non-use. The pain gets less when I do nothing, but with any use there is pain. I can read, say an article or column in a newspaper and that is about the limit for that sitting. It may be in an hour I can come back and read that much more."

As to his activities, the plaintiff testified:

"Since I bought the plantation I have had two men assisting me at different times. One of them was a Mr. Dean, about six years ago. That was when I was attempting to farm myself. The other was a Mr. John Teal. The first one was seven years ago, and the latter six. Since that time I haven't had any one to assist me. I *haven't* been doing the overseeing, collecting the rents, and managing the property,

overseeing the planting of the crops, overseeing the milk, when I had the herds, overseeing the taking of the milk to the creamery, or overseeing the feeding, and then seeing about the clinic on Saturday. I *haven't* done all of this. It is really what should have been done but I haven't been able to do it. For months at a time I did not go in there to see about the milk. From June 28th, 1926, to June 28th, 1927, I would very seldom go in to see about the milk. By very seldom I mean possibly once in two weeks."

■ While the evidence shows that the plaintiff made some effort to look after his business affairs, and rendered some assistance to other physicians in respect to maintaining a clinic for poor and indigent negroes at Hayneville, on a whole the evidence presented a question of fact whether common prudence and care required that he desist from such activity in consideration of his decreasing physical strength rather than aggravate the diseases from which he was suffering. Travelers' Insurance Co. v. Plaster, supra. This question was presented to the trial court on evidence given ore tenus, and, after due consideration, we are not prepared to hold that the conclusion of the trial court eventuating in a judgment for the plaintiff was clearly erroneous. Gattis Turpentine Co. v. Russell et al., 199 Ala. 4, 74 So. 231; Hackett v. Cash, 196 Ala. 403, 72 So. 52.

■ Nor can we affirm error in the refusal of the trial court to put the professional witnesses called, by the parties under the rule, after the parties had agreed that they might be excused from the rule. This ruling was addressed to the court's sound discretion, the exercise of which is not reviewable, except for gross abuse.

This disposes of all questions presented, and we find nothing in the record to warrant a reversal.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.