[No. 28489. Department Two. January 8, 1942.]

STEPHEN P. BURKE, *Respondent,* v. METROPOLITAN LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 120 P. (2d) 841.

*D. V. Morthland* and *Lane Morthland,* for appellant.

*J. P. Tonkoff* and *Sidney Livesey,* for respondent.

BLAKE, J.—This is an action on an accident insurance policy issued by defendant to plaintiff April 19, 1935. The facts out of which the action arose are not in dispute and may be summarized as follows:

Plaintiff lives in Yakima. On February 25, 1938, he drove to Portland to attend an initiation of the Forty and Eight Club of the American Legion. The initiation was held in the armory, where Burke, with some five hundred others, witnessed it from the balcony. At the

conclusion of the ceremony, the crowd rushed for the stairs. Burke lost his footing at the top and fell down the whole flight of twenty-five to twenty-seven steps. He was badly bruised and shaken up, but he walked to the hotel and attended a banquet that evening. The next day, he stayed in bed until about one o'clock. He and a friend who was with him then started for Yakima (the friend driving), where they arrived at about eight o'clock.

Plaintiff lived at and operated the Donnelly hotel. He was confined to his room for several days. From time to time, he would get up, go down to the lobby, and attempt to perform his accustomed duties. He suffered from attacks of vomiting, which necessitated the services of a physician, who diagnosed his condition as a bilious attack. During the most of March and April, he was up and about, attempting to supervise the operation of the hotel. Some time in the latter part of March, he began to have trouble in the use of his legs, and, in April, took to carrying a cane. His condition continued to grow worse and finally, in June, the lower part of his body became so paralyzed that he had to resort to a wheel chair, to which he has ever since been restricted.

He consulted many physicians, who were unable to make a diagnosis of his condition. He consulted Dr. Flothow in Seattle in November, 1938, who, at that time, was unable to make a diagnosis. The doctor gave him instructions as to treatment and told him to return "for further study" if he did not improve. He went back to Dr. Flothow in June, 1939. X rays were taken, upon examination of which (and after consultation with a neurologist), Dr. Flothow came to the conclusion that he was "dealing with a condition either due to an injury or due to a growth of some sort on his spinal cord." An exploratory operation eliminated

the possibility of tumor and confirmed the doctor's opinion that the condition was due to injury. Since there was no cause of injury other than plaintiff's fall down the armory steps at Portland, the doctor definitely ascribed the condition he found to that.

In the meantime, at the annual expiratory date of the policy, the defendant declined to renew it. Thereafter, plaintiff brought this action to recover the weekly indemnity guaranteed for total disability from the date of the accident. The clause in the policy upon which the claim is made, reads as follows:

"*Clause 2.* If such injuries shall not result as specified in Clause 1, but, directly and independently of all other causes, shall, within two weeks from the date of the accident, *continuously and wholly disable* and prevent the insured from performing any and every kind of duty pertaining to the occupation in which he is engaged at the time of the accident, the Company will pay the insured the *weekly indemnity above specified* for the period of such total disability, not exceeding 52 weeks.

"If such disability shall continue for the period of 52 weeks and if the insured shall then and thereafter be continuously and wholly disabled by such injuries, independently of all other causes, from engaging in any and every occupation or employment for wage or profit, the Company will continue the payment of the weekly indemnity so long as the insured shall be so disabled."

The defendant answered, denying the material allegations of the amended complaint, and, by way of affirmative defenses, alleged: (1) That "the plaintiff's total disability did not occur within two weeks from the date of the alleged accident as set forth in plaintiff's Amended Complaint"; (2) that plaintiff failed to give written notice of injury within twenty days after the accident as required by the terms of the policy; (3) that plaintiff's disability was not caused directly and

independently of all other causes by violent and accidental means, as required by the provisions of the policy. (No evidence was offered in support of the third affirmative defense; and no error on appeal is assigned in connection with the second.)

The cause was tried to a jury, which returned a verdict in favor of plaintiff. From judgment on the verdict, defendant appeals.

By its assignments of error, appellant presents three questions for determination: (1) Was the evidence sufficient to take the case to the jury; (2) should the court have granted a new trial on the ground that the verdict was against the weight of the evidence; (3) should the court have granted a new trial because, having submitted a special interrogatory to the jury as to whether plaintiff was *partially* disabled, it failed to instruct on that issue.

*First:* At appropriate times, appellant challenged the sufficiency of the evidence by motions for nonsuit, directed verdict, and judgment notwithstanding the verdict. Appellant's argument, in urging error upon the court's denial of these motions, is that the respondent's injuries did not result in continuous and total disability "within two weeks from the date of the accident" in contemplation of the terms of the clause we have quoted. That respondent suffered total disability during the first week or ten days subsequent to his injury, there can be no doubt. There can be no doubt that, during the period he was supposed to be suffering from a bilious attack, he was "wholly" disabled within contemplation of that term as used in the policy. Also, there can be no doubt that he was "wholly" disabled when he reached the wheel-chair stage.

But whether he was "continuously and wholly disabled" in the intervening period in March and April,

when he was up and about attempting to perform his usual duties in the operation of the hotel, is a more difficult question. Nevertheless, in view of what some of his duties were and in the light of the view this court has taken with respect as to what constitutes total disability, we are of the opinion that the question was one for the jury to determine.

In *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 158, 275 Pac. 550, it was said:

"Total disability, it seems to us, is largely a relative question . . . It seems to us that one is totally disabled, within the meaning of these policies, when he is so far disabled that he cannot, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit."

The court then quoted, with approval, the following from *Foglesong v. Modern Brotherhood of America*, 121 Mo. App. 548, 97 S. W. 240:

" 'If such is to be the construction placed upon the policy in suit, the defendant's demurrer to the evidence should have been sustained. But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities, and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers.

" 'Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the mean-

ing of the policy.   In our opinion, such was not within the contemplation of the parties.   In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity.' "

A large part of respondent's work as general manager of the hotel was "in the capacity of contacting groups, organizations, for conventions," with the object of building up patronage.   He also supervised a farm where garden produce was grown, and pigs and fish were raised, for the use of the hotel.   All these duties, he was unable to perform subsequent to the accident.

Appellant points out that he, nevertheless, continued to draw his salary as general manager.   The jury, however, may well have viewed this as a mere gratuity inasmuch as respondent's wife owned all the stock of the hotel company except a share held by respondent to qualify him to act as trustee.   In *Booth v. United States Fidelity & Guaranty Co.*, 3 N. J. Misc. 735, 130 Atl. 131, the supreme court of New Jersey, construing identical language under closely analogous facts, said:

"The fact that Booth tried to work is not to be taken as conclusive evidence of his ability to do so.   On the contrary, the agreed facts leave no doubt that, from the time of injury, he was in a serious condition, and that prudence required that he refrain from all effort until he was cured.   In the observation of all there have been instances where men have stuck to their posts long after ability was gone, and there are historic instances of dying men persisting in performing duty.   Plaintiff should not be penalized for honest efforts to keep going when nature demanded that he desist."

See, also, *Continental Casualty Co. v. Wynne*, 36 Okla. 325, 129 Pac. 16; *Bachman v. Travelers' Ins. Co.*, 78 N. H. 100, 97 Atl. 223; *Gross v. Commercial Casualty Ins. Co. of Newark*, 90 N. J. L. 594, 101 Atl. 169; *Metropolitan*

*Casualty Ins. Co. v. Cato,* 113 Miss. 283, 74 So. 114; *Bellows v. Travelers' Ins. Co. of Hartford, Conn.,* 203 S. W. (Mo.) 978; *United States Casualty Co. v. Perryman,* 203 Ala. 212, 82 So. 462; *Clarke v. Travelers Ins. Co.,* 94 Vt. 383, 111 Atl. 449; *Harasymczuk v. Massachusetts Accident Co.,* 127 Misc. 344, 216 N. Y. Supp. 97; *Fitzgerald v. Globe Indemnity Co. of N. Y.,* 84 Cal. App. 689, 258 Pac. 458; *New York Life Ins. Co. v. McLean,* 218 Ala. 401, 118 So. 753; *Pacific Mutual Life Ins. Co. v. Dupins,* 188 Ark. 450, 66 S. W. (2d) 284; *Caldwell v. Volunteer State Life Ins. Co.,* 170 S. C. 294, 170 S. E. 349; *Atlantic Life Ins. Co. v. Worley,* 161 Va. 951, 172 S. E. 168.

Under the authorities cited, it was for the jury to decide whether Burke was "within two weeks" of the accident "continuously and wholly disabled."

█ *Second:* In urging that the verdict was against the weight of the evidence, appellant calls particular attention to an application made March 19, 1938, to Northwestern Life & Accident Company for extended coverage on an accident policy, in which he represented himself to be "in good, sound and unimpaired health and condition." Also, appellant calls attention to proof of permanent total disability made by respondent to Aetna Life Insurance Company for the purpose of securing waiver of premium benefits on a life policy issued by that company. In that application appear the following questions and answers:

"3. . . . (b) Give date when your health first began to be affected in present illness. [Answer] April 25, 1938. . . . (f) Are you now totally disabled and unable to work? From what date have you been continuously and totally disabled? [Answer] Totally disabled (permanent at present) about April 25, 1938."

Appellant would have us accept these statements of respondent's as verities concerning his then state of

health. We think, however, that they amount merely to admissions against interest, the weight of which was for the jury to determine in the light of all the other evidence. And, in the light of Dr. Flothow's subsequent discovery of the cause of respondent's condition, we think the jury was fully justified in according little or no weight to them.

■ *Third:* The case was tried on the theory that respondent was "wholly disabled." In addition to admitting the fact in its answer, appellant's counsel, in his opening statement, said:

"We admit the writing and issuance of the policy. We did write the policy and delivered it to Mr. Burke. The policy was in force at the time he claims to have suffered the accident which he claims resulted in his disability. We further admit that at the time he started this lawsuit he was totally disabled; that was in, I believe, May or at least the early spring of this year when he started this lawsuit. We admit that at that time he was totally disabled, but we do not know and we have never been able to find out to our satisfaction when his disability commenced. He is disabled at the present time and we admit that; it is unfortunate but true."

Nevertheless, appellant requested, and the court submitted to the jury, a special interrogatory as follows:

"If you find from the evidence in this case that plaintiff, Stephen P. Burke, suffered an accident, which resulted in disability within two weeks from the date of the accident, was such disability such as to prevent the plaintiff from performing some one or more daily duty or duties pertaining to his occupation?"

The interrogatory injected, of course, an issue of partial disability, upon which appellant requested the court to instruct the jury. The court, however, refused the request. Appellant urges this as error requiring a new trial. We think, however, the error, if any, was favorable to appellant. In face of its admis-

sions of total disability, it was not in a position to insist upon the issue of partial disability being presented to the jury.

Finally, appellant argues that its liability should be limited to indemnity for fifty-two weeks. This argument presupposes that the action is wholly grounded in the first paragraph of clause two of the policy relating to *occupational* disability. In view of appellant's admissions, its position in this respect is untenable.

Judgment affirmed.

ROBINSON, C. J., SIMPSON, and JEFFERS, JJ., concur.

BEALS, J., concurs in the result.

[1]Reported in 120 P. (2d) 833.