[No. 67215-1-I.   Division One.   January 14, 2013.]

STEVEN LODIS ET AL., *Appellants*, v. CORBIS HOLDINGS, INC., ET AL., *Respondents*.

836

838

*John P. Sheridan* (of *The Sheridan Law Firm PS*), for appellants.

*Jeffrey A. James* (of *Sebris Busto James*), and *Howard M. Goodfriend* (of *Smith Goodfriend PS*), for respondents.

¶1 APPELWICK, J. — After being fired from Corbis Corporation, Lodis sued Corbis and its chief executive officer, Gary Shenk, claiming age discrimination and retaliation under the Washington Law Against Discrimination, chapter 49.60 RCW. Corbis counterclaimed, alleging Lodis's unjust enrichment, fraudulent misrepresentation, and breach of

fiduciary duty as a Corbis officer for failing to record any vacation time and accepting an erroneous double bonus. The trial court granted Corbis's motion for summary judgment on Lodis's retaliation claim, because Lodis did not "step outside" his ordinary job duties when he engaged in the activities for which he alleges retaliation. The trial court struck Lodis's claim for emotional damages based on his failure to provide discovery. The jury found in Lodis's favor on unjust enrichment and fraudulent misrepresentation. It found a breach of fiduciary duty but awarded no damages. As a result, a second trial was granted on the fiduciary duty counterclaim. The jury found Lodis breached his fiduciary duty for failing to record any vacation time, but not for accepting the double bonus.

¶2 We decline to read into the statute a requirement that an employee step outside his ordinary job duties as a prerequisite to claiming retaliation. We reverse the order granting Corbis's motion for summary judgment on Lodis's retaliation claim and remand for further proceedings. Otherwise, we affirm.

## FACTS

¶3 Corbis Corporation supplies digital images and stock photography worldwide. Steven Lodis was hired in 2005 by then-chief-executive-officer (CEO) Steve Davis to serve as vice president of worldwide human resources (HR) for Corbis. In July 2007, 37 year old Gary Shenk replaced Davis as CEO. Davis expressed concerns to Shenk about Lodis's performance. Instead of terminating Lodis, Shenk appointed Lodis to his nine person executive management team. Lodis was 55 at the time of the promotion. He initially received positive performance reviews from Shenk.

¶4 After becoming CEO, Shenk made many comments indicating his preference for younger workers. He talked about older workers being "out of touch," "an old-timer," "grandmotherly," or "the old guy on [the] team." Shenk also

expressed interest to Lodis in hiring younger workers for his executive team.

¶5 Lodis spoke with Shenk on several occasions about Shenk's age related comments. Lodis explained that there was a growing concern among Corbis employees about Shenk's comments. As the highest ranking HR officer at Corbis, Lodis reminded Shenk that age should not be a factor in hiring or firing employees. Lodis explained later that he admonished Shenk, because he was "trying to protect [him]." In late 2007, Lodis expressed his concern about Shenk's comments to Corbis General Counsel Jim Mitchell.[1] Around that same time, in late 2007 or possibly January 2008, Shenk promoted Lodis to senior vice president. Lodis also received a pay raise and incentive bonus at that time.

¶6 In January 2008, Shenk organized executive team members and an independent consultant to conduct Lodis's annual performance review. The parties dispute the circumstances surrounding that performance review. Lodis alleges that Shenk specifically recruited Lodis detractors to compile a list of Lodis's faults and reasons to fire Lodis, because of Lodis's complaints to Shenk about the possible age discrimination. Corbis counters that the independent consultant found Shenk's reviews to be "off the charts negative," which precipitated Shenk putting Lodis on probation.

¶7 Part of Lodis's probation required him to meet and discuss his working relationships with his colleagues. Shenk terminated Lodis for cause on March 26, 2008, for failing to meet the terms of his probation. Lodis allegedly lied to Shenk about meeting with the people who reported

---

[1] Lodis wrote in a declaration: "To the best of my recollection, it was in late 2007 that I went to SVP [senior vice president] and General Counsel Mitchell about my concerns over Shenk's constant reference to wanting to terminate Mark Sherman. Mitchell and I spoke for about ten minutes in his office in Seattle. I told Mitchell of my conversations with Shenk and my concerns that he was terminating everyone (Merritt, Bradley, McDonald, and now Sherman). I believe I told Mitchell of Shenk's intent to find a 'young Hollywood type' (someone Shenk knew from his time in California). As I remember Mitchell had little to say in response."

directly to him and failed to improve his relationship with them. Corbis claims this is the actual reason for Lodis's termination, along with ongoing performance issues and retaliation against another employee regarding a sexual harassment claim. Lodis counters that the performance review and probation were pretextual in order to fire Lodis for his complaints about Shenk's purported age discrimination.

¶8 Three months after his termination, Lodis sued Corbis and Shenk, alleging age discrimination under RCW 49.60.180 and retaliation under RCW 49.60.210. Judge Michael Hayden granted Corbis's motion for summary judgment on the retaliation claim. Judge Hayden concluded that Lodis was not engaged in statutorily protected activity under RCW 49.60.210, because he was simply performing his job duties by warning Shenk about the potential age discrimination. At trial, Judge Bruce Heller denied, on the same basis as Judge Hayden, Lodis's requests to amend his complaint and reinstate his retaliation claim.

¶9 In his original complaint, Lodis also claimed damages for emotional harm resulting from Corbis's alleged age discrimination and retaliation. Corbis requested discovery related to Lodis's treatment for emotional distress. Lodis acknowledged that he had been treated by two psychologists, but asserted the physician-patient and psychologist-patient privileges, and denied Corbis's discovery request. Corbis filed a motion in limine to preclude Lodis from introducing evidence of his alleged emotional distress at trial through testimony or documents. The trial court initially granted Corbis's motion, finding that when a plaintiff seeks emotional harm damages, it constitutes a waiver of psychologist-patient privilege. On Lodis's motion for reconsideration, the trial court gave Lodis the option to waive the privilege and produce the records, or strike the damage claim. Lodis again refused to provide discovery and was therefore precluded from introducing evidence of any emotional harm he suffered. The Supreme Court denied Lodis's motion for discretionary review.

¶10 During discovery, Corbis learned that Lodis had mistakenly received double payment of a $35,000 bonus. Lodis conceded that the double payment was made in error. He attempted to tender restitution of the bonus, but Corbis rejected payment.[2] Corbis also discovered that Lodis failed to record any vacation time in the payroll system during his tenure but accepted a payout of $41,155 plus a 401(k) match of $1,235 for 329 hours of accrued but unused vacation time. Based on this evidence, Corbis counterclaimed against Lodis for breach of fiduciary duty, unjust enrichment, and fraudulent misrepresentation. At trial, Mary Tomblinson, Corbis's payroll coordinator and HR system analyst, testified that Lodis used at least 35 more vacation days than he was entitled to. A summary of her analysis of those records was also admitted into evidence.

¶11 Before the first trial, the trial court refused to decide as a matter of law whether Lodis owed a fiduciary duty, instead leaving the issue for the jury. The jury found that Corbis had not engaged in age discrimination. It found in favor of Lodis on the unjust enrichment and fraud counterclaims. However, the jury found that Lodis owed a fiduciary duty and breached that duty, but awarded no damages. The trial court granted a new trial on Corbis's breach of fiduciary duty counterclaim based on this incongruous result of liability but no damages.

¶12 Before the second trial, Corbis moved for partial summary judgment to establish that Lodis was an officer with fiduciary duties. In its reply brief to that motion, Corbis introduced corporate resolutions indicating Lodis's status as an officer. Based on this evidence, Judge Heller found as a matter of law that Lodis was an officer.

¶13 The second jury found that Lodis did not breach his fiduciary duty by receiving the mistaken bonus, but did breach his fiduciary duty by failing to record any vacation

---

[2] Corbis explains in briefing that it rejected payment because Lodis failed to also tender the corresponding $1,050 401(k) match plus interest.

time and accepting the payout. The jury awarded damages in the full amount of the vacation payout: $42,389. Lodis appeals and Corbis cross appeals.

## DISCUSSION

¶14 Lodis appeals the trial court's grant of summary judgment dismissing his retaliation claim. He argues that the trial court improperly applied federal law to the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, in contravention of the statute's plain language and purposes. He also appeals the trial court's dismissal of his emotional harm damages claim. He contends that he should not need to waive his psychologist-patient privilege to claim generic emotional harm. Lodis assigns a number of errors to the fiduciary duty counterclaim and trial. Corbis cross appeals on exclusion of evidence and denial of its motion for judgment as a matter of law related to the fiduciary duty counterclaim.

### I. Retaliation Claim

¶15 We review summary judgment orders de novo. *Hadley v. Maxwell*, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Peterson v. Groves*, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. *CTVC of Haw. Co. v. Shinawatra*, 82 Wn. App. 699, 708, 919 P.2d 1243, 932 P.2d 664 (1996).

¶16 To establish a prima facie case of retaliation under the WLAD, the employee must show that (1) he engaged in statutorily protected activity; (2) the employer took some adverse employment action against the employee; and (3) there is a causal link between the protected activity and the adverse action. *Hines v. Todd Pac. Ship-*

*yards Corp.*, 127 Wn. App. 356, 374, 112 P.3d 522 (2005). At issue here is what constitutes statutorily protected activity. In the alternative, if we find that Lodis was engaged in protected activity, Corbis argues that Lodis's retaliation claim also fails, because he has not established a prima facie case.

A. Opposition Activity

¶17 Corbis urges us to adopt the "step outside" requirement that has developed in federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. ch. 8, cases. *See, e.g., Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 627-28 (5th Cir. 2008); *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004). The Tenth Circuit in *McKenzie v. Renberg's, Inc.* first adopted the step outside standard. 94 F.3d 1478, 1486-87 (10th Cir. 1996). The *McKenzie* court held that the FLSA does not require filing a formal complaint, but the employee must "step outside his or her role of representing the company" and take some adverse action. *Id.* at 1486. The court explained:

> Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company. . . . Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations.

*Id.* Under this standard, Corbis argues that Lodis was not engaged in statutorily protected activity, because he was merely doing his job as an HR officer advising Shenk about his potentially discriminatory practices.

¶18 The WLAD protects employees engaged in statutorily protected activity from retaliation by their employer. *See* RCW 49.60.210. It provides:

> It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise

discriminate against *any person* because he or she has *opposed any practices forbidden by this chapter*, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW 49.60.210(1) (emphasis added). The statue provides protection in two circumstances: (1) when an employee opposes forbidden practices and (2) when an employee files a charge, testifies, or assists in a proceeding. *Id.* The first, known as the "opposition clause," is at issue here. The second is the "participation clause." It is not at issue. The term "oppose," undefined in the statute, carries is ordinary meaning: "to confront with hard or searching questions or objections" and "to offer resistance to, contend against, or forcefully withstand." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1583 (2002). The WLAD mandates liberal construction of its provisions. RCW 49.60.020. A statutory mandate of liberal construction requires that we view with caution any construction that would narrow the coverage of the law. *Marquis v. City of Spokane*, 130 Wn.2d 97, 108, 922 P.2d 43 (1996). The purpose of the statute is to deter and eradicate discrimination in Washington—a public policy of the highest priority. *Id.* at 109; *Xieng v. Peoples Nat'l Bank of Wash.*, 120 Wn.2d 512, 521, 844 P.2d 389 (1993).

¶19 In contrast, the FLSA makes retaliation unlawful when an "employee has filed any complaint or instituted" a proceeding. 29 U.S.C. § 215(a)(3). The FLSA language is similar to the participation clause of the WLAD. But, the FLSA does not have an opposition clause like the WLAD. *See* 29 U.S.C. § 215(a)(3). Corbis's argument to impose a step outside requirement on the opposition clause would require us to read language into the WLAD. The ordinary meaning of "oppose" is not limited to activity outside the normal job duties of the employee. We would need to read those limiting words into the statute, something we are not at liberty to do. Moreover, the statute unambiguously protects *any person* who opposes unlawful discrimination in the workplace. RCW 49.60.210(1). As such, it is untenable to

carve out a step outside requirement for a limited class of employees who work in HR or some other position that requires advising their employer on discriminatory practices.

¶20 Where the WLAD provisions are "radically different" from federal law, Washington courts must diverge from federal statutory interpretations. *Martini v. Boeing Co.*, 137 Wn.2d 357, 375, 971 P.2d 45 (1999). In *Martini*, the Washington Supreme Court found the Title VII of the Civil Rights Act of 1964[3] damages provision to be radically different from the WLAD damages provision. *Id.* Title VII provides only for equitable relief, while the WLAD explicitly provides for both equitable relief and actual damages. *Id.* at 374. As a result, the court distinguished and declined to follow the Title VII cases. *Id.* at 375. Similarly, the WLAD and the FLSA are radically different, because the FLSA does not contain an opposition clause like the WLAD. For this reason, we find the FLSA step outside cases distinguishable. Adopting the step outside requirement would impermissibly narrow the protective language and purposes of the WLAD's opposition clause, contrary to the liberal construction mandate of the act. This we cannot do. *See Marquis*, 130 Wn.2d at 108.

¶21 Like the WLAD, Title VII has both an opposition and participation clause. *See* 42 U.S.C. § 2000e-3(a). Specifically, Title VII protects an employee from retaliation "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The WLAD is modeled after Title VII, so cases interpreting Title VII are considered persuasive authority. *Oliver v. Pac. Nw. Bell Tel. Co.*, 106 Wn.2d 675, 678, 724 P.2d 1003 (1986). Corbis cites the single federal circuit court decision that has applied the

---

[3] 42 U.S.C. §§ 2000e-2000e-17.

step outside standard to the Title VII opposition clause as persuasive authority. *See Equal Emp't Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998).

¶22 In *HBE Corp.*, the director of personnel, Bruce Ey, was instructed by corporate management to fire the employment manager. *Id.* at 549-50. Ey believed the motivation for the firing was discriminatory, so he refused. *Id.* at 550. On behalf of Ey and another employee, the Equal Employment Opportunity Commission brought an action for retaliation and discrimination under Title VII and state law. *Id.* The employer argued that Ey had not stepped outside his normal job duties, as required by *McKenzie*, and therefore did not satisfy the opposition clause. *Id.* at 554. But, citing *Moyo v. Gomez*, 32 F.3d 1382, 1385, *amended by* 40 F.2d 982 (9th Cir. 1994), the Eighth Circuit found that refusing to implement a discriminatory policy was sufficient to trigger the opposition clause of Title VII. *Id.* at 554. The court noted that refusing to implement the discriminatory policy placed the employee outside his normal managerial role, which was to implement company policy. *Id.*

¶23 We do not find *HBE Corp.* persuasive for a number of reasons. First, the WLAD contains a liberal construction mandate, which makes it broader in scope than Title VII. *See* RCW 49.60.020; *Martini*, 137 Wn.2d at 372-73. Second, the treatment of the *McKenzie* case and step outside issue in *HBE Corp.* was cursory and not necessary to the result. *See HBE Corp.*, 135 F.3d at 554. In the single paragraph dedicated to the step outside issue, no mention is made that *McKenzie* is an FLSA case, not a Title VII case. *See id.* No statement is made that cases interpreting the FLSA apply to Title VII. *See id.* Prior to addressing the step outside issue, the court had already concluded that the opposition clause was triggered. *Id.*

¶24 Lastly, the United States Supreme Court recently interpreted the opposition clause in Title VII very broadly. *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271, 276, 129 S. Ct. 846, 172 L. Ed. 2d 650 (2009).

There, Crawford alleged she was fired when she answered questions during an internal investigation of another employee's reported sexual harassment. *Id.* at 274. The employer argued the opposition clause did not cover Crawford, because she had not instigated or initiated a complaint. *Id.* at 275. The Court rejected this theory. *Id.* at 276. It noted with approval the *McDonnell* case, holding that it is opposition if an employee does not instigate action but instead refuses to follow a supervisor's order to fire a junior worker for discriminatory reasons. *Id.* at 277 (citing *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996)). The Court noted the dictionary definition of "oppose" includes " '[t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand.' " *Id.* (alterations in original) (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1710 (2d ed. 1957)). The Court explained that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion. *Id.* at 277-78. Nowhere did the Court find it necessary to discuss whether the employee stepped outside her normal employment duties or whether on remand the trial court should consider such a limitation on the opposition clause. This casts doubt on any persuasive value in the *HBE Corp.* opinion relative to a step outside requirement.

¶25 We acknowledge the competing policy concerns at play here. In *Hagan*, the Fifth Circuit explained that if it did not adopt the step outside rule, "nearly every activity in the normal course of a manager's job would potentially be protected activity." 529 F.3d at 628. However, adopting the step outside rule would strip HR, management, and legal employees of WLAD protection. These employees are often the best situated to oppose an employer's discriminatory practices. We therefore decline to deprive them of the statutory protection against retaliation. Doing so would create a disincentive for such employees to carry out their ordinary job duties, which often includes ensuring company compliance with employment and antidiscrimination laws. Further, without the step outside rule, these employees will

still need to make out a prime facie case of retaliation, so we do not fear the "litigation minefield" the Fifth Circuit warns of in *Hagan*. *Id*.

¶26 Lodis's job duties included ensuring Corbis's compliance with federal and state employment laws. Under the WLAD, Lodis did not need to step outside his ordinary job duties in order to oppose Shenk's potential discrimination. An employee need only show he had an objectively reasonable belief that his employer violated the law, not that the employer did in fact violate the law. *Ellis v. City of Seattle*, 142 Wn.2d 450, 460-61, 13 P.3d 1065 (2000). There is evidence that Lodis admonished Shenk several times about Shenk's age-related comments. Lodis told Shenk of the growing concern among Corbis employees about Shenk's age-related comments and employment decisions. He explained to Shenk that age should not be a factor in hiring or firing employees. Lodis also expressed his concerns about Shenk to Corbis General Counsel Jim Mitchell. Lodis told Mitchell that Shenk was terminating older employees in favor of younger workers. Lodis acknowledged that he was trying to protect Shenk from liability.[4]

¶27 Viewing all this evidence in the light most favorable to Lodis as the nonmoving party, there are genuine issues of material fact whether Lodis engaged in statutorily protected opposition activity under RCW 49.60.210(1). Whether Lodis opposed Shenk's purported discrimination is a determination we leave for the trier of fact. We reverse the trial court's order granting summary judgment on Lodis's retaliation claim and remand for further proceedings consistent with this opinion.

B. Same Actor Inference

¶28 Corbis argues that, in the alternative, we should affirm summary judgment, because Lodis failed to

---

[4] For instance, Lodis testified: "I was trying to protect Gary." And: "[T]here were legal precedents here . . . . Gary needed to be very careful as to how he was perceived by the employees."

make out a prima facie claim of retaliation. Corbis contends that the same actor inference rebuts Lodis's claim that Corbis acted with retaliatory motive in firing him. Washington courts apply the same actor inference in WLAD discrimination claims: "When someone is both hired and fired by the same decision makers within a relatively short period of time, there is a strong inference that he or she was *not* discharged because of any attribute the decision makers were aware of at the time of hiring." *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 189-90, 23 P.3d 440 (2001). Corbis urges us to apply the inference here, because Corbis promoted Lodis and gave him a raise, all around the same time that Shenk supposedly retaliated against Lodis.

¶29 The trial court granted summary judgment based on its finding that Lodis was not engaged in statutorily protected activity and thus did not reach this issue. No Washington case has applied the same actor inference to retaliation claims. In *Hill*, the Supreme Court noted that without the inference in discrimination cases, "employers could be discouraged from hiring the very persons the Legislature intended the Law Against Discrimination to protect, fearful that doing so would make them *more* vulnerable, rather than less, to legal claims of unlawful discriminatory animus if legitimate business reasons later required discharging such a person." *Id.* at 190 n.13. Similar policy concerns are not present here. Refusing to adopt the same actor inference in retaliation claims would not make the employer more vulnerable to such claims. Rather, adopting this inference would allow an employer to grant a raise or promotion prior to implementing a termination as a means of decreasing their exposure to a valid retaliation claim. We decline to adopt this inference with respect to retaliation claims and so decline to affirm the summary judgment on this alternative basis.

II. Psychologist-Patient Privilege Waiver

¶30 Lodis argues that the trial court erred when it precluded him from introducing evidence of his emotional

harm at trial. Namely, he contends that a simple claim for emotional harm should not require a plaintiff to waive his psychologist-patient privilege. He argues that where a plaintiff does not allege a specific psychiatric disorder, makes no claim of an exacerbated preexisting condition, and does not intend to rely on medical records or testimony, no waiver should be required. We disagree.

¶31 The trial court held that Lodis waived his psychologist-patient privilege by claiming damages for emotional harm. When Lodis failed to comply with discovery requests, the court prevented him from introducing evidence of damages for emotional harm. We review a trial court's discovery orders and discovery sanctions for abuse of discretion. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 629, 818 P.2d 1056 (1991); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). But, whether Lodis waived the privilege is a question of law we review de novo. *See Dietz v. John Doe*, 80 Wn. App. 785, 788, 911 P.2d 1025 (1996), *rev'd*, 131 Wn.2d 835, 935 P.2d 611 (1997).

¶32 Washington protects confidential physician-patient (RCW 5.60.060(4)) and psychologist-patient (RCW 18.83.110) communications. *See Petersen v. State*, 100 Wn.2d 421, 429, 671 P.2d 230 (1983). These statutory privileges were both enacted in derogation of the common law and are strictly construed. *Id.* The purpose behind the physician-patient privilege is to promote proper treatment by encouraging full disclosure and to protect the patient from embarrassment. *Smith v. Orthopedics Int'l, Ltd.*, 170 Wn.2d 659, 667, 244 P.3d 939 (2010). Plaintiffs waive their physician-patient privilege when they voluntarily put their physical or mental health at issue in a judicial proceeding. *See, e.g.*, RCW 5.60.060(4)(b) ("Ninety days after filing an action for personal injuries or wrongful death, the claimant shall be deemed to waive the physician-patient privilege."); *Carson v. Fine*, 123 Wn.2d 206, 213-14, 867 P.2d 610 (1994) ("[A] patient voluntarily placing his or her physical or

mental condition in issue in a judicial proceeding waives the privilege with respect to information relative to that condition."). The Washington Supreme Court recognizes that the physician-patient and psychologist-patient privileges provide essentially the same protection. *Petersen*, 100 Wn.2d at 429. Lodis points us to no Washington case law that requires us to treat these two privileges differently.

¶33 However, Lodis asks us to adopt one of two narrower approaches to waiver of psychologist-patient privilege found in federal law. Three different approaches have emerged in federal law for determining when a plaintiff waives the psychologist-patient privilege: a broad approach (privilege is waived upon allegation of emotional distress in the complaint); a middle ground approach (privilege waived when plaintiff alleges more than " 'garden variety' " emotional distress, like a specific psychiatric disorder); and a narrow approach (privilege is waived only when there is affirmative reliance on psychotherapist-patient communications). *See Fitzgerald v. Cassil*, 216 F.R.D. 632, 636-37 (N.D. Cal. 2003). These three approaches developed in the wake of the United States Supreme Court case *Jaffee v. Redmond*, which held that a psychotherapist privilege existed under Rule 501 of the Federal Rules of Evidence. 518 U.S. 1, 15, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996). In *Jaffee*, however, there was no waiver issue. Rather, the plaintiff sought to compel disclosure of the defendant police officer's confidential communications with a therapist. *Id.* at 3-4. As such, it does not dictate that this court break new ground and adopt the narrow or middle approach.

¶34 Thus, when a plaintiff puts his mental health at issue by alleging emotional distress, he waives his psychologist-patient privilege for relevant mental health records. The defendant is entitled to discover any records relevant to the plaintiff's emotional distress. Of course, the judge is still authorized to conduct an in camera review, seal the records, or limit their use at trial as necessary to protect the plaintiff's privacy. *See Jane Doe v. Oberweis Dairy*, 456 F.3d

704, 718 (7th Cir. 2006). CR 26(b)(1) provides, "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." When a plaintiff claims emotional distress, mental health records and provider testimony are relevant, because the plaintiff's mental health is at issue. *See Fitzgerald*, 216 F.R.D. at 634. For example, such records and testimony are relevant in showing causation or the degree of the alleged emotional distress. *Id.* Even if the plaintiff stipulates that he will not introduce any psychologist or expert testimony, the records may still be relevant to show causation and magnitude.[5]

¶35 Accordingly, Lodis waived his psychologist-patient privilege by claiming emotional harm damages. In his original complaint, Lodis claimed that he suffered emotional harm as a result of Corbis's alleged age discrimination and retaliation. He sought damages for his medical expenses, loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation. Lodis acknowledged, during discovery, that he was treated by two psychologists. That treatment is relevant to his claim for emotional harm damages, because he put his mental health at issue. Simply because he did not intend to introduce medical records, billings, or testimony does not mean those records are irrelevant and undiscoverable. When Lodis made a claim for emotional harm damages, he waived his psychologist-patient privilege, and the records related to his mental health became discoverable. Because he refused to allow discovery of those records, the trial court did not abuse its discretion in striking his claim for emotional harm damages.

---

[5] *Bunch v. King County Department of Youth Services* does not dictate otherwise. 155 Wn.2d 165, 181, 116 P.3d 381 (2005). There, the Washington Supreme Court held that mental health records are not strictly necessary where a plaintiff never consulted a health care provider. *Id.* The court explained that the plaintiff's own testimony can provide evidence of anguish and distress. *Id.* But, this does not negate the relevance of mental health records or the testimony of a treating psychologist when there is such evidence available.

## III. Fiduciary Duty Counterclaim

¶36 Lodis raises a number of issues relating to the fiduciary duty trial. Corbis also cross appeals on two issues from that trial. These arguments are addressed in turn below. Finding none persuasive, we affirm.

¶37 Questions of law are reviewed de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993). The court reviews the trial court's admission of or refusal to strike evidence for abuse of discretion. *Aubin v. Barton*, 123 Wn. App. 592, 608, 98 P.3d 126 (2004); *Deschamps v. Mason County Sheriff's Office*, 123 Wn. App. 551, 563-64, 96 P.3d 413 (2004). Admission of expert testimony is also reviewed for abuse of discretion. *Maehren v. City of Seattle*, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979).

### A. Fiduciary Duty as a Question of Law

¶38 Lodis argues that the trial court erred in the first trial by letting the jury decide whether he owed a fiduciary duty, because it should have been decided as a matter of law. Lodis is correct that whether an individual owes a legal fiduciary duty is a question of law. *See, e.g., S.H.C. v. Sheng-Yen Lu*, 113 Wn. App. 511, 524, 54 P.3d 174 (2002). The original trial court erred in treating the issue as one of fact for the jury, rather than deciding it as a matter of law. However, a new trial was ordered on the fiduciary duty claim and the issue of duty was decided as a matter of law before the second trial. And, breach of a legal duty is generally a question of fact, so there was no error in submitting that issue to either jury. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). As a result, Lodis has demonstrated no prejudice from the original error, so we find no basis to reverse. *See Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) ("[E]rror without prejudice is not grounds for reversal.").

## B. Admissibility of Corporate Resolutions

¶39 Before the second trial, the trial court found that Lodis was a Corbis officer as a matter of law.[6] This finding was based on several corporate resolutions signed by Corbis's sole director, Bill Gates. The resolutions listed Lodis and others as officers of the Corbis Corporation. Lodis contends that these resolutions are inadmissible hearsay. As a result, he explains, there is no evidence to establish that he was a Corbis officer as a matter of law, so the fiduciary duty counterclaim should have been dismissed.

■■■ ¶40 Business records are exceptions to the hearsay rule. ER 803(a)(6). They must be verified by the custodian of record or another qualified witness who can attest to the record's identity and mode of preparation. RCW 5.45.020. The record must be "made in the regular course of business, at or near the time of the act, condition or event." *Id.* Corporate meeting minutes are admissible under the business records exception. *Matteson v. Ziebarth*, 40 Wn.2d 286, 293, 242 P.2d 1025 (1952). In *Matteson*, a copy of meeting minutes was admissible as a business record to show the action taken at the meeting. *Id.*

¶41 Corbis's legal services administrator attested that the resolutions were true and correct. She verified that Bill Gates consented to the resolutions in lieu of special and annual meetings on the date signed. Lodis does not challenge the authority of Corbis to act by resolution of the director.[7] The corporate resolution is equivalent to the minutes of a corporate board meeting. Like in *Matteson*, the

---

[6] Lodis also acknowledged that he was an officer of Corbis.

[7] RCW 23B.08.010 mandates that "[a]ll corporate powers shall be exercised by or under the authority of the corporation's board of directors." RCW 23B.08.030 allows a corporate board of directors to have only one member. And, RCW 23B.08.210 authorizes corporate action without a meeting when approved by all members of the board. The provision continues, "The approval of the corporate action must be evidenced by one or more consents describing the corporate action being approved, executed by each director either before or after the corporate action becomes effective, and delivered to the corporation for inclusion in the minutes or filing with the corporate records." RCW 23B.08.210.

resolutions were introduced to show the action taken: Corbis's sole director appointing Lodis and others to be officers of Corbis. The trial court did not abuse its discretion by refusing to strike the corporate resolutions. We find no error in the trial court's finding that Lodis was an Corbis officer as a matter of law.

## C. Admissibility of Lodis's Calendar and Related Expert Testimony

¶42 Lodis assigns error to admission of four pieces of evidence: daily view printouts of Lodis's Microsoft Outlook (Outlook) calendar showing his vacations, weekly view printouts of the same, Tomblinson's testimony as an expert witness interpreting Lodis's calendar, and the summary of her review of Lodis's Outlook calendar. We find no error.

¶43 Lodis's Outlook calendar was admitted pursuant to ER 801(d)(2) (admission of a party opponent) and ER 803(a)(6) (business records exception, codified at RCW 5.45.020). An admission by a party opponent that is the "party's own statement" or a "statement of which the party has manifested an adoption or belief in its truth" is exempt from exclusion as hearsay. ER 801(d)(2)(i)-(ii). An admission is not binding on the party—he is permitted at trial to explain or deny the admission, or introduce evidence to the contrary. *See Burke v. Metro. Life Ins. Co.*, 12 Wn.2d 162, 169-70, 120 P.2d 841 (1942). The trial court found that Lodis manifested his approval of the calendar by making the entries himself or authorizing his assistant to do so. This is sufficient to constitute an admission of a party opponent, and the trial court did not abuse its discretion. Lodis was then free to challenge the calendar's accuracy at trial, but such a challenge does not make the evidence inadmissible.

¶44 The calendar was also properly admitted as a business record. Business records are admissible, even if they contain hearsay, when they are created in the ordinary course of business and there is no evident motive to falsify.

*State v. Ziegler*, 114 Wn.2d 533, 537-38, 789 P.2d 79 (1990); RCW 5.45.020. The trial court's decision to admit a business record is given significant weight. *Ziegler*, 114 Wn.2d at 538. Here, Lodis's assistant had incentive to keep accurate records of his vacation time for her own purposes and for other executives to know when Lodis was available. Indeed, Corbis President Robert Allen testified at trial that executives were "pretty meticulous" about managing their calendars. Lodis himself testified that his assistant was "very persistent" in keeping track of his vacation time. Given all this indicia of reliability, the trial court did not abuse its discretion in admitting Lodis's Outlook calendar under the business records exception.

¶45 Lodis also argues that Tomblinson should not have been allowed to testify as an expert witness. Expert witnesses need not have personal knowledge of the evidence prior to trial. *See* ER 703. Under ER 703, Tomblinson was permitted to testify based on her analysis of data presented to her at trial—she did not need personal knowledge of Lodis's vacation time. There is no support in the record or Lodis's cursory argument on the issue that the trial court abused its discretion in qualifying Tomblinson as an expert witness. Because all the underlying evidence for Tomblinson's summary of Lodis's vacation days is admissible, we find no error in the trial court's admittance of the summary under ER 1006. *See Pollock v. Pollock*, 7 Wn. App. 394, 405, 499 P.2d 231 (1972).

### D. Jury Finding of Breach

¶46 Lodis argues that even if he did owe a fiduciary duty, it did not include "regular job duties" like recording vacation time or accepting a duplicative bonus. Corporate officers owe fiduciary duties of good faith, care, and loyalty. RCW 23B.08.420. Officers must act in the best interests of the corporation—"a standard of behavior above that of the workaday world." *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 64 Wn.2d 375, 381, 391 P.2d 979

(1964); *see also* RCW 23B.08.420(1). Officers are forbidden from acquiring profit for themselves—directly or indirectly—at the expense of the company. *Hayes Oyster Co.*, 64 Wn.2d at 381. We find no authority that as a matter of law this claim should have been dismissed, rather than submitted to the jury. Expert witness Mary Tomblinson concluded that, based on her analysis, Lodis used at least 35 days of vacation beyond what he was permitted. It was for the jury to find, based on the evidence, that Lodis profited at the company's expense by not recording any vacation time, thereby breaching his fiduciary duties of undivided loyalty and care. We find no error.

### E. Lodis's Motion for a New Trial and Remittitur

¶47 Similarly, Lodis argues that the trial court abused its discretion by denying his motion for a new trial on the fiduciary duty claim, because the jury's verdict was against the weight of the evidence. We review denial of a motion for a new trial for abuse of discretion. *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000). Discretion is abused if a feeling of prejudice has been engendered in the minds of the jury preventing a fair trial. *Id.* Granting a motion for a new trial is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, we can say as a matter of law that there is no substantial evidence or reasonable inferences to sustain the verdict for the nonmoving party. *Kohfeld v. United Pac. Ins. Co.*, 85 Wn. App. 34, 41, 931 P.2d 911 (1997). We defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence. *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997).

¶48 During the four day trial, the jury heard substantial evidence against Lodis. It heard testimony from expert witness Mary Tomblinson, who conducted a thorough analysis of Lodis's calendar, phone records, and e-mails, and concluded that he used 35 more vacation days than permit-

ted. The jury also heard testimony from Lodis's assistant, and how persistent she was in maintaining Lodis's calendar accurately. The jury was also entitled to weigh Lodis's own credibility as a witness, including his claim that he used only 17 days of vacation. Two juries found that Lodis breached his fiduciary duty by accepting the vacation payout. Lodis makes no showing that those results were based on the jury's passion or prejudice. The trial court did not abuse its discretion in denying Lodis's motion for a new trial.

¶49 Lodis also assigns error to the trial court's denial of his request for remittitur. We review for abuse of discretion. *Locke v. City of Seattle*, 162 Wn.2d 474, 486, 172 P.3d 705 (2007). There is a strong presumption that a jury verdict is correct. *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 179, 116 P.3d 381 (2005). Based on the testimony described above, there is substantial evidence that Lodis should not have been paid any accrued vacation time at termination, because he used more than allowed. As a result, the jury's award for the entire payout is reasonable and grounded in the evidence presented. We find no abuse of discretion in the trial court denying remittitur.

### F. Unfair Prejudice

¶50 Lastly, Lodis argues that the fiduciary duty counterclaim prejudiced his age discrimination claim, so he should be granted a new trial on the latter. Counterclaims are by their nature prejudicial. Lodis fails to cite any legal authority standing for the proposition that a possibly prejudicial counterclaim is grounds for a new trial. *See State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (courts may assume that where no authority is cited, counsel has found none after diligent search); *State v. McNeair*, 88 Wn. App. 331, 340, 944 P.2d 1099 (1997) (failure to cite authority constitutes a concession that the argument lacks merit). This court is not required to search out authorities in support of Lodis's proposition. *Young*, 89 Wn.2d at 625. Thus, we decline to consider Lodis's argument of prejudice.

## G. Exclusion of Prior Complaints Against Lodis

¶51 Corbis also cross appeals, arguing that the trial court erred by erroneously excluding evidence that a female subordinate accused Lodis of harassment and retaliation. Corbis contends that on remand, the trial court should allow Corbis to introduce evidence of these prior complaints against Lodis. A trial court has broad discretion to balance probative value versus prejudice under ER 403. *Indus. Indem. Co. of the Nw. v. Kallevig*, 114 Wn.2d 907, 926, 792 P.2d 520 (1990).

¶52 Before trial, Lodis sought to exclude under a number of evidentiary grounds Corbis's evidence that Lodis allegedly sexually harassed and retaliated against former employee Krista Hale. Corbis argues that this evidence was relevant to establish Shenk's good faith reasons for terminating Lodis's employment. The court allowed Corbis to introduce a warning memo sent to Lodis regarding the sexual harassment. But, the court excluded evidence underlying the memo's conclusions, including an independent investigation of Lodis's alleged harassment and retaliation. That investigation concluded that Lodis did not violate the company's antiharassment policy and made no findings that Lodis retaliated against Hale. The trial court found that because the investigation cleared Lodis of the charges, there was no nexus between the investigation and Lodis's termination. The court did not articulate the evidence rule it relied on to exclude evidence of the investigation. However, it was reasonable for the court to conclude that the evidence was not relevant (ER 402) and that the evidence's probative value was substantially outweighed by the danger of unfair prejudice (ER 403). Thus, we find no abuse of discretion in the trial court refusing to admit the evidence.

## H. Judgment as a Matter of Law on the Duplicative Bonus

¶53 Corbis also contends that the trial court erred when it denied Corbis's motion for judgment as a matter of law on

its claim for return of the duplicative bonus. Corbis argues that Lodis had a legal obligation to return the bonus, because he was a fiduciary and conceded that he received the unearned bonus in error.

¶54 When reviewing a trial court's decision to deny a motion for judgment as a matter of law, we apply the same standard as the trial court. *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997). Judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. *Id.* Substantial evidence is that which is sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *Brown v. Superior Underwriters*, 30 Wn. App. 303, 306, 632 P.2d 887 (1980).

¶55 Corbis is correct that the business judgment rule does not protect officers when they act in bad faith. *Interlake Porsche + Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 509, 728 P.2d 597 (1986). But, there is substantial evidence that Lodis did not act in bad faith in mistakenly receiving the double bonus. For instance, he did not have the power to authorize the double payment and was not responsible for compelling its payment. No one at Corbis knew the bonus was erroneously paid, and no one requested its return. Lodis also admitted that he received the bonus in error and attempted to repay it when he learned of it during discovery, but Corbis rejected that payment. Viewing this evidence in the light most favorable to Lodis as the nonmoving party, it is reasonable to conclude that he did not act in bad faith and did not breach his fiduciary duty by mistakenly receiving the bonus.

¶56 Moreover, Corbis simply appears to be recasting the dismissed unjust enrichment claim in a new light. ("If Lodis unfairly gained an advantage during his employment, he is obligated to return to Corbis any sums unfairly obtained until after termination of his employment.") The first jury

found in favor of Lodis on the unjust enrichment counter-claim. No error was assigned to that verdict. *See State v. Sims*, 171 Wn.2d 436, 441, 256 P.3d 285 (2011). Unjust enrichment was not relitigated in the second trial, and it is not now before us to consider. We affirm the trial court's denial of Corbis's motion for judgment as a matter of law on the mistaken bonus issue.

¶57 We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Cox, J., and Ellington, J. Pro Tem., concur.