

2014 MAR 17 AM 8:50

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RADIANCE CAPITAL, LLC, a Washington limited liability company, | ) ) ) | No. 69547-9-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) ) | |
| CIRCLE S FOODS, INC., a foreign corporation, dba CIRCLE S. MARKET and DAILY; SUBHASH CHANDER SHARMA and "JANE DOE" SHARMA, husband and wife; JAGTAR SINGH and "JANE DOE" SINGH, husband and wife; and NAVJIT SINGH and "JANE DOE" SINGH, husband and wife, | ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION FILED: March 17, 2014 |
| Respondents. | ) ) ) | |

BECKER, J. — This appeal involves a contract dispute over $381 in force-placed insurance premiums for a commercial fryer purchased through a financing company. The financing company, Radiance Capital LLC, appeals the trial court's decision in favor of Circle S Foods Inc., the Oregon business that purchased the $6,000 commercial fryer for a convenience store. Finding no error, we affirm.

We refer to the respondents collectively as Circle S. The judgment in favor of Circle S was entered after a bench trial on August 14, 2012.

## FACTS

In November 2005, Circle S purchased a ventless fryer and financed it through Radiance Capital, a Washington equipment financing company. The fryer cost $5,950. Circle S agreed to pay Radiance 60 monthly payments of $148.83, for a total of $8,929.80 ($5,950.00 in principal and $2,979.80 in interest.) The financing agreement provided that the terms were fully reflected in the writing and could not be changed except by written agreement of all the parties. Radiance issued a check for the price of the fryer and took out a UCC security interest on it.

As part of the financing agreement, Circle S was required to "maintain and provide Creditor evidence satisfactory to Creditor for the maintenance of all risk insurance against loss of or damage to the Collateral for not less than the full replacement value." Exh. 1, ¶13; Finding of Fact 5. Radiance, the creditor, was to be named as a loss payee. Finding of Fact 5. The agreement required Circle S to maintain "public liability and property damage coverage in such amounts and in such forms as creditor (Plaintiff) shall reasonably require." Finding of Fact 6.

Radiance provided Circle S a "Notice to Provide Insurance Authorization" form. Exh. 3. On October 7, 2005, Circle S signed the notice and faxed it to the store's insurance agent, Jim Short of Farmers Insurance in Salem, Oregon. Radiance officials did not sign the notice, and that document was not referred to

2

in the financing agreement. Paragraph "a" of the notice instructed the insurance agent to provide Radiance with an endorsement to Circle S's policy evidencing primary all risk insurance or its equivalent coverage for the equipment, with Radiance named as "loss payee." Finding of Fact 8. Paragraph "b" of the notice required the agent to provide Radiance an endorsement showing public liability and property damage insurance with a single limit of not less than $500,000 per occurrence, with Radiance to be named as an additional insured. Exh. 3; Finding of Fact 9. The effective date was to be October 7, 2005, or earlier.

Short placed insurance on the fryer and sent the first certificate of insurance directly to Radiance. There is no dispute that this original proof of insurance was acceptable to Radiance in all respects.

Beginning in January 2007, Radiance's invoices began including a new monthly charge for "insurance premiums." Finding of Fact 13; Exh. 5. Neither the exhibits nor the witnesses provided any explanation for why Radiance started charging Circle S for the premiums in January 2007. Circle S did not pay the monthly premiums, which were $6.25 at first and then increased to $7.81. Exh. 5. Circle S made only the regular loan payments of $148.83. Circle S made its last loan payment in October 2010.

On January 13, 2011, Radiance sent Circle S a letter demanding payment of $381.78 in "Insurance Fees" as well as a $150.00 "Agreement Transfer Fee." Exh. 15. The letter stated these were necessary in order for Circle S to purchase

3

the fryer from Radiance. Exh. 15.[1] Circle S tendered $150.00 for the transfer fee but disputed the demand for the insurance fees.

On February 8, 2011, Radiance declared a default, stating that Circle S now owed an additional $480.00 in default and collection fees, and that the creditor would pursue legal action if Circle S did not pay $861.78 within 10 days. Exh. 21. Circle S filed suit in Oregon requesting declaratory relief. On February 28, 2011, Radiance responded by filing suit in King County for the balance claimed to be due. Due to a choice of law provision in the financing agreement, the Oregon action was dismissed and the dispute proceeded to a bench trial in King County Superior Court. The only two witnesses were Michael Price, Radiance's authorized representative and chief financial officer, and Jagtar Singh, owner of Circle S.

Price testified that Radiance force-placed the insurance on the fryer in response to Circle S's failure to provide satisfactory proof of insurance. As evidence of breach, Radiance offered its financing agreement and related documents, invoices showing what it paid for force-placed insurance, and the monthly invoices sent to Circle S with the fees for that insurance. Price testified that it was Radiance's standard practice to send written notices of insurance

---

[1] The financing agreement does not mention a $150 "Agreement Transfer Fee." Exh. 1. Radiance asserts that this fee covers release of its UCC security interest. Appellant's Br. at 16.

4

deficiencies and to give debtors an opportunity to cure. But he admitted he had not seen copies of any such documents that were sent to Circle S.

Singh testified that Circle S maintained the same type of insurance coverage for the entirety of the financing contract; the only change was to increase the amount of liability coverage from $1 million to $2 million. As proof that it satisfied the insurance requirements, Circle S offered its insurance billing statement and a letter from its agent confirming that Radiance was continuously listed as a loss payee and an additional insured. Exh. 18 at 7; Exh. 41.

On August 16, 2012, the trial court gave its oral ruling, finding that Radiance had "failed to prove by a preponderance of the evidence that the Defendants have breached the contract":

> There is no evidence before this Court that the Defendants were ever notified that the insurance was not satisfactory until after the conclusion and final payment of the contract amounts. And if you look at paragraph 25 of the parties' Financing Agreements, any notices to the parties concerning their obligations under the Financing Agreement were required to be in writing. The Court concludes it is insufficient to simply charge a premium without an explanation of some kind as to how or why the insurance that the Defendants continued to provide proof of on an annual basis was inadequate.

On September 17, 2012, the court entered detailed findings of fact and conclusions of law. Radiance filed a motion for reconsideration and/or new trial based on "newly discovered evidence" regarding whether Radiance had sent Circle S notice of an insurance deficiency. The court denied the motion.

In October and November 2012, the court awarded Circle S attorney fees and costs of approximately $32,700. Radiance appeals.

## STANDARD OF REVIEW

When a trial court has weighed the evidence in a bench trial, this court's review is "limited to determining whether substantial evidence supports its findings of fact and, if so, whether the findings support the trial court's conclusions of law." Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555, 132 P.3d 789 (2006), aff'd, 162 Wn.2d 340, 172 P.3d 688 (2007). The substantial evidence standard is "deferential and requires the appellate court to view all evidence and inferences in the light most favorable to the prevailing party." Lewis v. Dep't of Licensing, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006). This court defers to the trial court for purposes of evaluating the persuasiveness of the evidence and the credibility of witnesses. Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 861, 292 P.3d 779 (2013). Unchallenged findings of fact are verities on appeal. Keever & Assocs., Inc. v. Randall, 129 Wn. App. 733, 741, 119 P.3d 926 (2005), review denied, 157 Wn.2d 1009 (2006). This court reviews de novo whether the trial court's conclusions of law flow from the supported findings of fact. Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

## CONTRACT TERMS

The financing agreement required Circle S to list Radiance as a loss payee on all risk insurance covering the value of the fryer and to provide proof of

6

that insurance to Radiance. The financing agreement also required Circle S to maintain liability insurance in an amount and form as required by Radiance, but the financing agreement did not specifically require Circle S to provide proof of liability insurance to Radiance. The Notice to Provide Insurance Authorization directs Circle S's insurance agent to provide proof of insurance naming Radiance as *both* "Loss Payee" and "Additional Insured." Radiance argues that the financing agreement and the notice must be read together to impose a duty on Circle S to provide proof of both insurance coverages on a continuing basis.

The trial court rejected this argument in conclusion of law 2, to which Radiance assigns error. The court concluded there "are inconsistencies between the Financing Agreement and the Notice to Provide Insurance Authorization," and these inconsistencies create an ambiguity that must be construed against Radiance as the drafter. See Lamar Outdoor Advertising v. Harwood, 162 Wn. App. 385, 395, 254 P.3d 208 (2011). As the trial court noted, "there is no reference to the Notice to Provide Insurance Authorization in the Financing Agreement," and when the financing agreement wanted to incorporate a document, it did so explicitly, as with Schedule A. Significantly, the Notice to Provide Insurance Authorization does not require Circle S to provide Radiance with annually updated proof of liability insurance but merely with proof of insurance "with an effective date as shown on the date below [October 7, 2005] or earlier." Exh. 3. And the financing agreement only requires Circle S to give

7

Radiance 30 days' advance notice in writing of any cancellation or change in insurance coverage. Exh. 1, ¶ 13. We find no error in conclusion of law 2.

BREACH

Radiance claims it had to start charging Circle S for insurance premiums due to deficiencies in Circle S's 2009 and 2010 policies. The trial court found no evidence that Radiance notified Circle S in writing of any deficiencies, as required by the financing agreement, until after Circle S. made its final payment on the fryer. Conclusion of Law 3. The court concluded it was insufficient for Radiance "to simply charge Defendant Circle S for an insurance premium without an explanation as to how and why the insurance that Defendant Circle S continued to provide proof of on an annual basis was inadequate." Conclusion of Law 4. The court concluded that the claim for breach of contract failed in the absence of such a notice. Radiance assigns error to these conclusions and to some of the factual findings underpinning them.

The financing agreement required Radiance to provide Circle S any notices related to the agreement in writing, and Price testified that it was standard practice for Radiance to give written notice of insurance deficiencies.

Radiance assigns error to finding of fact 12, in which the court notes that Radiance failed to follow its standard practice of giving customers written notice and an opportunity to cure:

> Plaintiff's authorized representative, Michael Price, testified that it was Plaintiff's standard practice to send its customers a written notice, with an opportunity to cure, in any instance where the

8

> Plaintiff believed that the customer had failed to provide Plaintiff with adequate proof of insurance. Plaintiff failed to follow this standard practice with Defendant Circle S. At no time during the five year course of this contract, did any employee of the Plaintiff provide a written notice to the Defendants that Plaintiff required any additional or different insurance or proof of insurance, nor did any written notice advise the Defendants to cure any shortcoming in the proof of insurance provided.

The court's finding accurately reflects Price's testimony and Radiance's exhibits at trial.

Radiance contends that providing opportunities to cure was merely a "courtesy to its customers," and "it was not contractually required to do so." Appellant's Reply Br. at 15. This argument fails. Radiance did not assign error to the court's finding of fact 23: "Paragraph 25 of the Financing Agreement states that any notices to the parties concerning their obligations under the Financing Agreement were required to be in writing."

Alternatively, Radiance contends that its monthly invoices with the insurance charges constituted written notice of Circle S's insurance deficiency. See Appellant's Reply Br. at 15 ("Radiance did in fact send Circle S approximately 49 written notices that it was unsatisfied with Circle S's proof of insurance. These notices came in the form of monthly invoices.") Radiance contends, in other words, that receiving an unexplained invoice for an insurance premium is sufficient notice as a matter of law of an insurance deficiency. Radiance cites no authority for this proposition, and we reject it. We find no error in conclusions of law 3 and 4.

9

MOTION FOR RECONSIDERATION

Radiance moved for reconsideration on the basis of "newly discovered evidence" and contends the court erred by denying the motion. This court reviews a trial court's denial of a CR 59(a) motion for abuse of discretion. Collins v. Clark County Fire Dist. No. 5, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010).

The "newly discovered evidence" was letters US Bank allegedly sent to Circle S on behalf of Radiance. An e-mail attached to the motion for reconsideration shows Radiance did not request these documents from US Bank until August 13, 2012, a day before trial:

> We go to trial tomorrow morning on this deal that I spoke to you about and I was wondering if when an insurance certificate came in to US Bank and it was insufficient was there a standard letter that was sent out? I see in account notes that insurance cert requests were sent out. Also, if there is a letter used does it go to the customer or to the insurance agent? If you have a letter can you send me a copy and also if you have a copy that was directly [sent] to Circle S Market and Daily [that] would be even more helpful.

US Bank responded seven days later, on August 20, 2012, e-mailing three letters. The first letter is to insurance agent Short, indicating that Circle S's insurance was due to expire in February 2006 and Radiance was requesting a renewal certificate. The second, to Circle S, is dated January 10, 2007. It indicates that insurance coverage had been canceled and asks for a reinstatement or renewal certificate. And the third, also to Circle S, is dated June 20, 2007. It notifies Circle S that Radiance declared the lease in default in June 2007 due to failure to maintain required insurance. Radiance claims these

10

documents directly undermined some of the findings and conclusions the trial court relied on to deny relief. But the two letters actually addressed to Circle S are not material to the issue of notice because they were sent in January and June 2007, a period during which—according to the trial testimony of Price—Circle S had satisfied all insurance requirements. See Report of Proceedings at 100.

Radiance fails to show that the three letters were material, could not have been discovered with reasonable diligence and produced at trial, or would have changed the result. See Go2Net, Inc. v. CI Host, Inc., 115 Wn. App. 73, 88-89, 60 P.3d 1245 (2003). Contrary to the assertion by Radiance, the record provides no basis for concluding that substantial justice has not been done, as required by CR 59(a)(9). See Larson v. Georgia Pac. Corp., 11 Wn. App. 557, 562, 524 P.2d 251 (1974) (noting "disagreement as to credibility and interpretation of the evidence does not support a conclusion that substantial justice has not been done.")

## ATTORNEY FEES

Paragraph 18 of the financing agreement provides for attorney fees and costs in a dispute over enforcing the agreement. As the prevailing party, Circle S is awarded attorney fees and costs on appeal. RAP 18.1; RCW 4.84.330.

Affirmed.

WE CONCUR:

Becker, J.

Dwyer, J.

Appelwick, J.